[Civ. No. 1249.    Third Appellate District.—July 28, 1914.]

## ALEXANDER ALLEN, Respondent, v. LOS MOLINOS LAND COMPANY (a Corporation), Appellant.

DAMAGES—BREACH OF CONTRACT TO SUPPLY WATER FOR IRRIGATION—LOSS OF· CROP—SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS.—In this action to recover damages for breach of contract by the vendor of land to furnish the vendee water for irrigation, resulting in the loss of the latter's potato crop, the findings as to the preparation of the land for planting, as to the time when it was ready to receive water, as to the arrest of the growth of the potatoes by reason of the lack of water, and that when water finally was furnished it was too late to save the crop, are supported by the evidence.

ID.—MEASURE OF DAMAGES—VALUE OF CROP LESS COST OF GROWING AND MARKETING.—The correct measure of damages in such case is the market value of the potatoes at the selling place, less the expenses incurred in growing and marketing the crop; under the rule of section 3300 of the Civil Code that where an action is for the breach of an obligation arising from contract, the measure of damages "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the the ordinary course of things would be likely to result therefrom."

ID.—FINDINGS AS TO DAMAGES—INTERPRETATION—WHETHER SUPPORT JUDGMENT.—A finding by the court in such case that the cost of producing and marketing the crop "would have been the sum of $129.00, and that the net damage accruing to the plaintiff, to wit, the value of the crop that would have been produced less the said sum of $129.00 was as great as $700.00," is not a finding that the value of the crop was seven hundred dollars, but that its value was a sum equal to at least seven hundred dollars, after deducting $129.00, and it supports the judgment for seven hundred dollars.

ID.—EVIDENCE TO SHOW THAT FURNISHING OF WATER WAS INDUCEMENT TO CONTRACT.—It is not error to admit testimony in such action that the agreement that water was to be furnished for irrigation was an inducement to purchase the land.

ID.—AMENDMENT OF PLEADING DURING TRIAL—DISCRETION OF TRIAL COURT—REVIEW ON APPEAL.—The allowance or disallowance of an amendment in the midst of a trial is within the discretion of the trial court, and its ruling will not be disturbed on appeal unless such discretion has been abused.

ID.—AMENDMENT OF ANSWER SO AS TO SHOW ABILITY TO FURNISH WATER—WHEN PROPERLY REFUSED.—It is not an abuse of discretion in such an action for the court to refuse to permit the defendant, during the trial, to amend its answer by alleging that it could have put its ditches into condition to furnish the plaintiff with water if demand therefor had been made, where the complaint alleges that the defendant had not completed the canals and was not in a condition to deliver water and the answer does not deny the allegation.

ID.—NOTICE TO CORPORATION OF AVERMENTS OF COMPLAINT WHERE ITS OFFICER VERIFIES ANSWER.—If the answer was verified by the superintendent of the defendant corporation, it is charged with notice of the averments of the complaint and cannot claim surprise at the trial when a case is made in accordance with the pleading.

ID.—NEW TRIAL—MENTAL CONDITION OF ATTORNEY AS GROUND.—A trial court does not err in denying the defendant a new trial on the ground that its attorney was afflicted with brain trouble at the time he prepared its answer, where it appears that, although the attorney died shortly afterward suffering from such malady, he exhibited his usual mental vigor in attending to other legal matters at the time of his alleged mental impairment.

APPEAL from a judgment of the Superior Court of Tehama County and from an order refusing a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

McCoy & Gans, for Appellant.

W. P. Johnson, for Respondent.

CHIPMAN, P. J.—This is an action for damages under a written contract, made part of the complaint, whereby defendant was to sell and plaintiff was to buy certain 12.54 acres of land, and, among other agreements, plaintiff was entitled to receive from the Coneland Water Company, organized for the purpose of irrigating the lands of defendant and others, "one-fifth miner's inches per acre, at such times and places and subject to such rules and regulations" as may be prescribed by said Coneland Water Company, and for which water plaintiff was to pay two dollars per acre annually. Both said companies were under the management of one and the same person. It is alleged in the complaint that the irrigating season was by a rule of said Coneland Water Company declared to be from April 1st to October 31st of each year, and said rule was in force from and after April 1, 1912; "that one of the chief inducements of plaintiff to enter into said contract was the provision in said contract in respect to furnishing water for said land" (Par. V); that about March 18, 1912, plaintiff had all of his said land planted to potatoes; that said land was prepared for said planting in a farmerlike manner and agreeably to the custom of good husbandry, and that the soil of said land was suitable for raising large crops of potatoes with proper irrigation, and said contract provided for a supply of all the water necessary for the land for such purposes (Par. VI); that about April 15, 1912, "said potatoes so planted were growing nicely and gave promise of making a good crop, but from said date were in need of water for irrigation thereof. That between said date and the 18th day of May, 1912, the growth of said potatoes was arrested because of lack of water, and between said dates said potato crop was continuously in need of water for irrigation thereof." (Par. VII); "that the defendant and said Coneland Water Com-

pany had not had their canals and irrigating ditches in proper
condition for the furnishing of water for the said land in
accordance with said contract, and that said canals and irrigat-
ing ditches were not constructed and prepared so the water
could be delivered upon the said land until the 18th day of
May, 1912, when the water was furnished by said companies
to plaintiff for his said land. That no provision had been
made by the said companies by which water could have been
furnished and delivered to plaintiff for the irrigation of his
said land at an earlier date than the said 18th day of May,
1912'' (Par. VIII) ; ''that by reason of the failure of said
companies to furnish water between said dates, the growth
of said potatoes was arrested, and when water was delivered
to the plaintiff for the said crop as set forth herein, it was
too late to save said crop from being a total loss''; that plain-
tiff depended upon defendant to furnish water for said pur-
pose and by reason of its failure so to do said crop was a total
loss (Par. X) ; that by reason of the foregoing plaintiff has
been damaged in the sum of seven hundred dollars (Par. X).
Damages are also claimed for the cancellation by defendant of
said contract, because of plaintiff's failure to pay installments
due thereunder, which failure it is alleged resulted from the
failure to raise said potato crop. As the court found against
plaintiff on this issue and as plaintiff does not appeal, this
branch of the case need be no further noticed.

The complaint and answer are verified. Defendant denied,
on information and belief, the averments in paragraph V of
the complaint; denied the averments of paragraph VI as to
alleged proper planting and preparation of the land, but
admits its suitability for growing potatoes and alleges that
said land was not ready to receive water nor properly pre-
pared prior to May 18, 1912. The averments of paragraphs
VII and VIII are admitted by not denying them. Defendant
denies the averments in paragraphs IX and X. The answer
was verified by Thomas H. Means, the general manager of the
companies.

The court found paragraphs I to IX, inclusive, of the com-
plaint to be true and ''That plaintiff was ready and his land
was prepared to receive water earlier than May 18, 1912, and
plaintiff was so ready and his land was so prepared in time
to have prevented the loss of his crop, if water had been fur-

nished by defendant.'' The court also found that plaintiff was damaged "in a sum equal to what the value of the said potato crop would have been if water had been furnished, less the additional costs and expenses that would have been incurred in taking care of, harvesting and selling said crop" which the court found was one hundred and twenty-nine dollars, "and that the net damage accruing to the plaintiff, to wit, the value of the crop that would have been produced less the said item of $129.00 was as great as the sum of $700.00."

Judgment accordingly passed for plaintiff for seven hundred dollars from which and from the order denying its motion for a new trial defendant appeals.

1. The findings as to the preparation of the land for planting; that the land was ready to receive water earlier than May 18, 1912; that the growth of the potatoes was arrested by reason of the lack of water, and that when water finally was furnished it was too late to save the crop, are challenged as unsupported by sufficient evidence.

Plaintiff testified that the soil is rich loam well adapted to the growing of potatoes, which defendant admitted; that he prepared the land by deep plowing and sufficient harrowing agreeably to the requirements of good husbandry; that he bought his seed from Oregon of approved varieties, in good condition, and planted it in accordance with approved methods of planting; that the seed came up and showed healthy and promising growth; that in due time he hoed and "hilled up" the earth against the vines in proper manner and kept the ground cultivated to retain moisture and promote further growth. He testified: "That spring was a very dry year, and there was a great lack of rain. There was a very long dry spell, at the end of which there was a very hot north wind, and after that there was a very heavy rain storm, after this dry spell, and which soaked the ground very thoroughly. This was May 19th. This was the day after the water was delivered." He testified that he examined the vines at this time and "a second growth" appeared which he learned later had rendered the crop of no value. He testified that up to May 1st the potatoes seemed to be doing well, but the continued dry weather and lack of moisture which irrigation would have supplied was the apparent cause of the "set back" which the potatoes received. He testified that after water was furnished there was no lack of moisture, but noth-

ing could then have saved the crop. There was corroborating
testimony of some of the essential facts testified to by plain-
tiff. Defendant introduced witnesses whose testimony tended
in some degree to dispute the correctness of plaintiff's testi-
mony, but all that we are at liberty to say of it is that it
created a conflict which it was for the trial court to deal with.
Its findings have sufficient support and must stand as present-
ing the ultimate facts in the case.

2. The evidence was that under favorable conditions "it was
a poor year for potatoes." There was testimony that such
land as plaintiff's "ought to raise nothing less than 50 sacks
per acre, and ought to bring as high up as 150 sacks." Plain-
tiff in his testimony said that he "was figuring on 50 sacks to
the acre of 120 pounds to a sack." He gave the market price
of the two varieties he planted at the time they should have
matured and have been ready for market, also the cost of
producing and marketing the crop, or, as the court expressed
it, the market value of the potatoes less "costs and expenses
that would have been incurred in taking care of, harvesting
and selling said crop." With these facts before it, and the
acreage planted, the court arrived at what we think was the
correct measure of damages, to wit, the market value of the
potatoes at the selling place, which the testimony showed was
Red Bluff, less the expenses incurred in growing and market-
ing the crop. The action is for the breach of an obligation
arising from contract, and the measure of damages "is the
amount which will compensate the party aggrieved for all the
detriment proximately caused thereby, or which in the ordi-
nary course of things would be likely to result therefrom."
(Civ. Code, sec. 3300.)

It is claimed that the finding as to the damages does not
support the judgment, and properly construed means seven
hundred dollars less one hundred and twenty-nine dollars, to
wit, five hundred and seventy-one dollars, and not seven
hundred dollars as entered in the judgment. The court found
the cost of producing and marketing the crop "would have
been the sum of $129.00, and that the net damage accruing
to the plaintiff, to wit, the value of the crop that would have
been produced less the said sum of $129.00 was as great as
$700.00." This is not a finding, as defendant contends, that
the value of the crop was seven hundred dollars, but that its
value was a sum equal to at least seven hundred dollars after

deducting one hundred and twenty-nine dollars, and supported the judgment for seven hundred dollars. A simple calculation of fifty sacks of one hundred and twenty pounds each at 1¼ cents per pound, the lowest market price named, would give a net value greater than the sum allowed.

3. Error is claimed because plaintiff was permitted to testify that the agreement that water was to be furnished for irrigation was an inducement to purchase the land. One of the conditions of the contract of sale was that plaintiff should receive one-fifth miner's inches of water per acre on said land. It was not varying the terms of the contract for plaintiff to say that this was an inducement. The contract itself said as much.

4. Plaintiff testified that he was familiar with the rules of the water company and knew there was a regulation that a water user desiring to irrigate should notify the company or its officers, in writing, three days in advance of the time water was needed. "Q. Did you make any demand in writing for the delivery to you of water? A. Not at that time. I was told it was not necessary. Q. When did you make any demand at all, either in writing, or otherwise? Mr. Johnson (plaintiff's attorney) : I object on the ground it is incompetent, irrelevant and immaterial. The pleadings admit that the company didn't have the canals completed, and couldn't deliver it (the water) before this particular time (May 18th). What is the use of making demand before they have their canals ready to deliver it? The Court: I will sustain the objection. You allege you were ready to deliver on the 18th of May, and the inference is that you couldn't deliver it before that." The complaint distinctly alleged that the water company had not completed its canals and was not in condition to deliver water before that date which was admitted by not denying it: Objection to a similar question was later on sustained. After some further testimony was taken Mr. Wells, defendant's attorney, asked leave to file the following amendment to the answer: "Furthermore answering the complaint of plaintiff, the defendant admits that the canals and ditches were not in perfect condition to deliver water, but defendant alleges that it could and that it would have put the ditches into condition to furnish any and all of the water needed had demand been made for the same, and defendant alleges that plaintiff or any other person, did not make demand. Defend-

ant further says that it could within a very few days have furnished water after a demand is made. . . . The Court: I will deny the application to amend the answer at this late stage of the case.''

The complaint alleges that by the rules of the water company the irrigating season began on April 1st and that the defendant was not prepared to deliver water to plaintiff until May 18th, and the evidence was that the damage became irreparable prior to the latter date. There was no denial that the company was unable to furnish water sooner than May 18th; it was, therefore, immaterial whether or not a demand for water was made. Plaintiff was not called upon to perform the idle act of making a demand concededly impossible of being complied with.

In support of its offer to amend the answer and of its claim that the court erred in refusing to allow the amendment offered, many cases are cited in illustration of the meaning of section 473 of the Code of Civil Procedure, to the effect that amendments to pleadings are favored to enable a party to prove all the facts necessary to this cause of action or defense. (*Crosby* v. *Clark*, 132 Cal. 8, [63 Pac. 1022], and *San Francisco etc. Society* v. *Leonard*, 17 Cal. App. 254, [119 Pac. 405], are cited as distinctly so holding. The court is empowered to impose terms where a party is taken by surprise and may even continue the case. While this is true, it is also ruled that the allowance or disallowance of an amendment in the midst of a trial is within the discretion of the trial court, and its ruling will not be disturbed unless such discretion has been abused. (*Manha* v. *Union Fertilizer Co.*, 151 Cal. 581, [91 Pac. 393] ; *Salmon* v. *Rathjens*, 152 Cal. 290, [92 Pac. 733].) The answer was verified by the superintendent of both companies and defendant is charged with knowledge of the averments of the complaint. The allegation that defendant had not so far completed its canals and ditches as to make it possible to furnish plaintiff's land with water earlier than May 18th, could not have escaped the notice of defendant or its attorney and hence defendant cannot complain that it was surprised. Presumably the averment was not denied because it could not be truthfully controverted, and plaintiff had a right so to assume the fact to be when he went to trial. The proposed amendment gives evidence of hasty preparation and fails fairly to present the issue that defendant was pre-

pared on demand to furnish plaintiff the needed water. The amendment seems to rely on the rule of the water company requiring three days' notice by a water user. The rules of the water company are not in the record, and all we know of this rule is derived from a question on cross-examination of plaintiff by Mr. Wells as follows: "Q. Regulation number three, which says water users desiring to irrigate shall notify the company or its duly appointed officer three days in advance of the time water is needed, and blanks will be furnished by the company for this purpose, and these blanks are to be filled out, giving time water is desired, the length of run desired, and number of inches needed and the water user will then be notified when the water can be deliverd to him, and he must be prepared for the delivery—you were familiar with that regulation? A. I was. Q. Did you make any demand for the delivery in writing for the delivery to you of water? A. Not at that time. I was told it was not necessary." It seems to us that this regulation had reference to the delivery of water after the canals and ditches were completed and was designed to aid the company in its distribution of water to many users. The regulation certainly did not mean that the company would construct its canals and ditches upon three days' notice. By its own regulation the irrigating season commenced on April 1st at which time the company should have been ready to deliver water. The proposed amendment does not state clearly or at all that its canals and ditches were in a condition to have furnished water within three days. We cannot say that under the circumstances the court abused its discretion.

5. Upon the motion for a new trial appellant submitted certain affidavits tending to show that at the time the answer was prepared Mr. Wells, appellant's attorney, was afflicted with brain trouble of which he, some time after the trial, died. There were counter affidavits from which the inference was fairly deducible that Mr. Wells had not at the time suffered any perceptible diminution of his mental powers. The record bears evidence that Mr. Wells had his case well in hand, and the trial judge was in a position to observe his capacity intelligently to conduct the defense. We cannot see that the court erred in denying the motion on this ground.

Superintendent Means made affidavit in support of the motion that had plaintiff given notice under rule three of the

water company ''said canals and ditches would have been constructed and prepared so that water could have been delivered upon the land of said plaintiff for the irrigation thereof according to said contract, within three days after the giving of such notice,'' and that the reason said canals and ditches had not been so constructed as to deliver water to plaintiff's land earlier than May 18th was that plaintiff had not given any notice as provided in said regulation three. It will be observed that this statement of the situation is much more specific than is found in the proposed amendment.   But it cannot be said nor is it shown that it was through surprise or excusable neglect that the facts were not set forth in the answer.   It was still within the discretion of the court to grant or deny the motion and we find no just ground for interfering with its ruling.

It is strongly urged that the mental condition of Mr. Wells was unknown to defendant and came to its knowledge only through the autopsy after his death whence, by *a posteriori* reasoning, his condition at the time of the trial is arrived at. It may be conceded that an incipient stage of brain lesion had developed, but there was evidence that Mr. Wells had returned from treatment at San Francisco, and had resumed work in his office, had, shortly before the trial, assisted in the trial of a case in court, attended to the business of a bank for which he was attorney, and otherwise exhibited his usual mental vigor.   Had it clearly appeared without conflict that Mr. Wells was in fact incapable of framing the answer in this case or of conducting the defense and that these facts were unknown to defendant and could not with reasonable diligence have been known to it, a different situation would be presented.   We are unable to discover that the trial court abused its discretion.

The judgment and order are affirmed.

. Hart, J., and Burnett, J., concurred.