[Civ. No. 1394.  Third Appellate District.—December 21, 1915.]

## JESSE GRIFFITH, Respondent, v. WELBANKS & COMPANY (a Corporation), Appellant.

DAMAGES — BREACH OF CONTRACT OF PURCHASE — GROWING CROP OF APPLES—LOSS BY ELEMENTS—EXCESSIVE JUDGMENT.—In an action for damages for breach of a contract to purchase a growing crop of apples, it is error to award the plaintiff, as damages, the full contract price, without taking into account the cost of picking, nailing the shook, and hauling the apples to the designated point of shipment and putting them on board the cars, which the plaintiff was obligated to do under the terms of the contract, notwithstanding the apples were destroyed by the elements before harvesting through the alleged fault of the defendant in not furnishing the necessary materials and boxes for such purpose.

ID.—TRUE MEASURE OF DAMAGES—SECTION 3300, CIVIL CODE.—In an action for damages for breach of a contract to purchase a growing crop of apples which was destroyed by the elements before it was harvested, and was never in a condition to be delivered to the buyer, section 3300 of the Civil Code, and not section 3311, furnishes the true measure of damages.

ID.—EVIDENCE—MARKET VALUE OF APPLES.—Where there is a dispute as to the contract price of the apples, it is error to strike out testimony as to their market value.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial.   Emmet Seawell, Judge presiding.

The facts are stated in the opinion of the court.

W. H. Mahony, for Appellant.

Theodore A. Bell, Dudley D. Sales, and E. S. Bell, for Respondent.

CHIPMAN, P. J.—Plaintiff commenced the action to recover the sum of one thousand seven hundred dollars for the breach by defendant of the following alleged contract:

## "AGREEMENT.

"This agreement, made and entered into this twenty-third day of September, 1912, by and between Jesse Griffith, of St. Helena, California, and Welbanks & Company, a corporation,

with its principal place of business in the City and County of San Francisco, State of California,

"Witnesseth, That the said Welbanks & Company agree to purchase and does purchase and the said Jesse Griffith agrees to sell and does sell all number one apples (approximately) 4000 boxes growing on that certain tract of land leased by said Jesse Griffith at the price of (*ten* [10] *dollars per ton or*) fifty ($.50) cents per box f. o. b. St. Helena.

"Jesse Griffith agrees to nail up all shook, do all the picking and hauling from the orchard to St. Helena, and when apples are ready for shipment, haul same from the packing house and load f. o. b. the cars at St. Helena, California.

"Welbanks & Company agree to supply all the necessary material, viz.: Shook, paper, nails, etc., for the packing of said crop, to haul same from railroad at San Francisco to store, and to furnish the packer for the packing of said crop. (*Pay freight on shook, apples, etc.*)

"It is further understood and agreed that after said charges and cartage have been deducted from the gross proceeds the said Jesse Griffith and Welbanks & Company shall enjoy all profits, share and share alike.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

[Signed.]                    "WELBANKS & CO.
                             "B. C. FLOCTON, Sec.
                             "JESSE GRIFFITH."

It is alleged that the four thousand boxes of apples mentioned in the contract "were ready for picking, packing, and shipping on or about October 1, 1912, as the defendant then and there well knew, but the defendant, for a period of fifteen days after said apples became ready for picking, packing, and shipping as aforesaid, willfully failed, neglected, and refused to supply the necessary materials and boxes for the packing of said crop, or to furnish the packer for the packing thereof, and solely by reason of said delay, about twenty-five hundred boxes of said 'number one' apples which remained on the trees unpicked, were destroyed by wind and rain"; alleged that plaintiff was ready and willing at all times to do all the picking, etc., required of him by said contract, but by reason of defendant's said neglect plaintiff was unable "to pick any part of said twenty-five hundred boxes, or to preserve them from destruction by wind and rain as aforesaid";

that there were picked and packed "1594 boxes of said 'number one' apples," for which defendant has paid plaintiff three hundred dollars and no more, and there is now due and owing plaintiff from defendant the sum of one thousand seven hundred dollars; that plaintiff has fully performed each and every covenant in said contract by him to be performed.

Defendant denied the execution of the contract set out in the complaint but alleges that, on September 23, 1912, defendant prepared and signed in duplicate a proposed agreement in form similar to that set forth in plaintiff's complaint, except that as proposed the contract read "at the price of ten ($10) dollars per ton or fifty ($.50) cents per box f. o. b. St. Helena," whereas as changed by plaintiff it read, "at the price of fifty ($.50) cents per box f. o. b. St. Helena," and there were added to the fourth paragraph the words, "Pay freight on shook, apples, etc." The words "ten ·($10) dollars per ton or" were erased by drawing ink lines through them and the added clause was written in by pen. The contract as proposed was typewritten. That as thus changed plaintiff returned one of the duplicate copies of the agreement, with a letter calling attention to the words "pay freight on shook, apples, etc.," but did not call defendant's attention to the alteration by striking out the words "ten ($10) dollars per ton or," and defendant "had no knowledge of the striking out of said words last referred to until on or about the 3d day of January, 1913, when its attention was directed thereto by letter from plaintiff and after all the apples hereinafter de- scribed had been shipped, and the contract hereinafter alleged had been performed and executed by the defendant herein." It is then alleged that the document set forth in the complaint is but one of a number of paper writings signed by the parties; that it was not the intent of plaintiff to sell and defendant to buy the apples referred to, but that the transaction was to be a joint venture, except that plaintiff was to be guaranteed ten dollars per ton for all No. 1 apples shipped to defendant, and the terms of the agreement actually entered into were as follows: Plaintiff was to harvest the crop and haul it to the packing-house to be packed; he was to nail up all shook and to haul all said crops, after it was so packed, to the depot at St. Helena and place the same aboard the cars for shipment to San Francisco, and to receive in payment there- for ten dollars per ton, estimated at about twenty-three cents

per box, and it was likewise agreed that the cost of packing, including the materials required therefor, together with said ten dollars per ton or twenty-three cents per box, would be fifty cents per box; that defendant agreed on its part to advance the cost of supplying materials for packing, namely, shook, paper, nails, etc., and the labor and service of packers, advance the cost of freight on shipments by rail and cartage at San Francisco, and to sell the apples at the best market price; that upon making sales all charges, including the material and cost of labor for packing and said guaranteed ten dollars per ton (or twenty-three cents per box) of apples and all charges for freight and cartage at San Francisco, were to be deducted from the gross proceeds of sales and the net profits, if any, were to be divided equally between plaintiff and defendant; that the words "price of fifty cents per box f. o. b. St. Helena," as appear in said document set forth in plaintiff's complaint, referred to "the estimated cost of said apples after payment of said $10.00 per ton to plaintiff and payment of the cost of the material and labor furnished for packing the same for shipment at St. Helena." The answer denies the averments of the complaint as to the alleged number of boxes of apples ready for shipment October 1, 1912, or at any time; denies that defendant refused to supply the necessary materials for boxes; denies that by reason of any delay on defendant's part to furnish boxes, two thousand five hundred or any number of boxes of said apples remained on the trees unpicked and were destroyed by wind or rain; denies that plaintiff was ready or willing to do the part of the work which he agreed to do; and denies that plaintiff solely or at all was unable to pick any boxes of apples or to preserve them from destruction by wind or rain through any neglect or refusal of defendant; denies that plaintiff packed or delivered to defendant 1,594 boxes of No. 1 apples pursuant to any agreement, or that defendant paid plaintiff any money other than under the agreement set out in the answer; denies that there is any money due plaintiff from defendant other than as alleged in the answer; that plaintiff packed and shipped 1,593 boxes of apples, of which only 1,034 were No. 1 apples and that 559 boxes were smaller in size and of less marketable value, and that defendant sold said 1,593 boxes to the best advantage and realized therefrom $1,228.85 and no more; alleges that defendant paid out on account of said charges

certain stated sums, and that the share of the net profits to which plaintiff is entitled is the sum of $231.85, which defendant offered to pay plaintiff prior to the commencement of the action, but plaintiff refused to accept the same, and that defendant paid into court said sum of $231.85. Defendant prays judgment in favor of plaintiff for said last named sum and that defendant recover costs of suit. The cause was tried with a jury and plaintiff had the verdict of one thousand two hundred dollars. Defendant appeals from the judgment and from the order denying its motion for a new trial.

Plaintiff estimated that there were four thousand five hundred boxes of No. 1 apples on the trees when the contract was made. In the contract the estimate was four thousand boxes (approximately). He shipped 1,593 boxes. In his testimony plaintiff testified that of the apples "blown off the trees on account of wind and rain, I figured from 2,500 to 3,000 boxes were number one apples." Under the contract plaintiff was to "nail up all shook, do all the picking and hauling from the orchard to St. Helena and when apples are ready for shipment, haul same from the packing house and load f. o. b. the cars at St. Helena, California." Plaintiff testified at some length as to delays in sending packing materials and packers; that there were not enough packers to keep up with the picking and that some of them were incompetent; that by reason of defendant's failure to perform its part of the agreement in these and other particulars the picking and packing ran along so late in the season that about two thousand five hundred or three thousand boxes of apples were destroyed by wind and rain storms. He testified that 1,593 boxes of apples were packed and shipped and none of them rejected, and that he had received on account three hundred dollars; that his orchard was on Howell Mountain, eight miles from St. Helena. Other witnesses testified to facts tending to establish plaintiff's contention that the destruction of his crop of apples was attributable to defendant's failure to perform its part of the contract. There was evidence submitted by defendant in conflict with plaintiff's testimony.

Defendant's answer and its evidence was in effect that the contract agreed upon and under which plaintiff and defendant acted was one of profit-sharing, by which plaintiff was guaranteed ten dollars per ton or twenty-three cents per box, and after the various charges referred to in the contract and the

cost of marketing the fruit were deducted, plaintiff and de-
fendant were to share equally whatever profits there might
be.   Plaintiff testified that there was no such understanding.
Defendant called witnesses who testified in support of its
contention and introduced letters written by plaintiff to de-
fendant during the course of the packing and up to the close
of the transaction, which seem to support defendant's position.
At no time prior to January did plaintiff make any claim for
apples destroyed by winter storms or that defendant was re-
sponsible for the loss.   However, if the jury was justified
from sufficient evidence in finding that the loss was caused
by defendant's failure to perform its duty under the contract
and plaintiff was free from fault, which we do not now deem
it necessary to decide, and, if the jury were justified from the
evidence in finding that defendant agreed to pay plaintiff fifty
cents per box net for his apples and not ten dollars per ton,
or twenty-three cents per box, and that there was no agree-
ment to share profits as part consideration for the sale, issues
upon which we express no opinion, there remains the question:
Was the amount of the verdict justified by the evidence?

It is conceded that in estimating damages the jury allowed
fifty cents a box on three thousand boxes of apples, less three
hundred dollars paid on account, but took no account of the
cost of picking, nailing the shook, and hauling the apples to
St. Helena and putting them on board the cars.   Plaintiff
justifies the verdict on the ground that as the apples were
destroyed there was no occasion for incurring the expense of
these charges, and defendant cannot complain, because in any
event its liability was to pay fifty cents per box.   Except
where otherwise expressly provided by the Civil Code, the
measure of damages ''for the breach of an obligation arising
from contract . . . is the amount which will compensate the
party aggrieved for all the detriment proximately caused
thereby, or which, in the ordinary course of things, would be
likely to result therefrom.''   (Civ. Code, sec. 3300.)   Where the
title to personal property is vested in the buyer, the detriment
caused by his breach of the agreement to accept and pay for
the property ''is deemed to be the contract price.''   (Civ.
Code, sec. 3310.)   ''The detriment caused by the breach of a
buyer's agreement to accept and pay for personal property,
the title to which is not vested in him, is deemed to be: . . .
2. If the property has not been resold in the manner pre-

scribed by section 3049 [i. e., sold to enforce a lien, not this case], the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it.'' (Civ. Code, sec. 3311.)

Clearly, the title to the property involved in the present case was not vested in defendant, and section 3310 has no application. Where, as here, the property consisted of a growing crop which was destroyed by the elements before it was harvested, and was never in a condition to be delivered to the buyer, we do not think section 3311 furnishes the true measure of damages. The just and equitable measure is found in section 3300. Plaintiff was to receive, upon his view of the contract, fifty cents per box for his apples after he had picked, packed, and hauled them to St. Helena and delivered them on board the cars. Upon no just principle can he recover the full contract price, for the detriment to him is at most the contract price less the expenses he would have incurred had he delivered the apples.

In *Coburn* v. *California etc. Co.*, 144 Cal. 81, 84, [77 Pac. 771], the contract was for the sale of cement clay at a stated price per cubic yard on delivery. Defendant received a certain quantity and refused to receive any more. After referring to section 3311 of the Civil Code, the court said: ''Where, however, there is no value, or where under the terms of the special contract the market value is not an appropriate or adequate criterion of damages, it has been said that the measure of damages is compensation for the actual loss suffered. (24 Am. & Eng. Ency. of Law, 1115.) The law seeks to give the complaining party the value of his bargain—to prevent a loss which the fulfillment of the contract would have prevented—to put the injured party, so far as money can do it, in the same position as if the contract had been performed. (8 Am. & Eng. Ency. of Law, 632.) Accordingly, the contract price less the cost of performing the contract was held to be the proper measure of damages when the buyer refused to take all the tomatoes grown on a certain tract of land, it appearing that there was no other market for the tomatoes.'' (Citing cases. See *O'Connell* v. *Main etc. Hotel Co.*, 90 Cal. 515, [27 Pac. 373].)

In *Allen* v. *Los Molinos Land Co.*, 25 Cal. App. 206, [143 Pac. 253], there was a breach of a contract by failing to furnish water for the irrigation of a crop of potatoes, in consequence of which the yield was less than it would have been had sufficient water been supplied. We held in that case that section 3300 of the Civil Code furnished the rule for measuring the damages, namely, the market value of the potatoes at the selling place less the expenses incurred in growing and marketing the crop. Plaintiff offered no evidence of market value at the selling place or elsewhere. The jury had no criterion by which to measure the damages except the contract price of the apples and the estimated quantity destroyed.

In its answer defendant denied the execution of the contract sued upon; denied that in its altered form it expressed the intention of the parties, and set forth in much detail what it claimed was the contract as shown by the acts, the verbal agreements, and correspondence of the parties; that the price guaranteed plaintiff was ten dollars per ton or what both parties estimated would be twenty-three cents per box, in addition to which plaintiff was to share equally with defendant in the profits. In a letter written by plaintiff to defendant, September 18, 1912, when negotiations were progressing for the sale and purchase of the apples, plaintiff stated that the price for the apples was figured at ten dollars per ton in enumerating the different items making up fifty cents per box. Upon the issues as presented by the pleadings, plaintiff claiming fifty cents per box net, more than double the amount defendant claimed was the contract, defendant was entitled to any evidence which would legitimately tend to discredit plaintiff's claim and sustain defendant's claim. Defendant's witnesses testified that the market value of apples at St. Helena, such as were involved, was $12 per ton. The court afterward struck out this testimony and defendant excepted to the ruling. We think this was error, for, had the jury believed the testimony of these witnesses, it would have had some tendency to show that plaintiff's claim was unreasonable and that defendant would not have been likely to enter into a contract to pay twice the market value of the apples.

We refrain from discussing the sufficiency of the evidence to sustain the implied finding of the jury that the contract

was as contended by plaintiff, for the reason that should another trial be had the evidence may not be the same as at the first trial.

The judgment and order are reversed.

Burnett, J., and Hart, J., concurred.