**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Ann SAKELLSON and Jeff Sakellson, Defendants and Appellees.**

Cr. No. 1087.

Supreme Court of North Dakota.

Dec. 18, 1985.

---

Keith Reisenauer, Asst. State's Atty., Fargo, for plaintiff and appellant.

Pancratz, Yuill, Wold, Johnson & Feder, William D. Yuill (argued), Fargo, for defendant and appellee Ann Sakellson.

Bruce Erwin Aarestad, Fargo, for defendant and appellee Jeff Sakellson.

LEVINE, Justice.

In this appeal by the State from a suppression order the issue presented is whether the failure of law enforcement officers to announce their presence and mission prior to entering through an open door to a house constitutes a "breaking" under North Dakota Century Code § 29–29–08 requiring suppression of the evidence seized in the subsequent search. We hold that it does and affirm the order suppressing the evidence seized during the search of defendants' residence.

## 1. FACTS

On June 15, 1984 agents of the North Dakota Drug Enforcement Unit received information from an informant that he regularly purchased marijuana from the defendants Jeff and Ann Sakellson. In a telephone call monitored by the agents the informant arranged for the defendants to deliver marijuana to him later that evening.

Based on this information the agents procured a search warrant for the defendants' residence. This was a standard "knock-and-announce" warrant requiring the agents to announce their authority and purpose before entering into a house. The officers were familiar with the alternative "no-knock" warrant authorizing entry without announcement, but declined to obtain one.

Five officers proceeded to the defendants' residence and observed the house for twenty to thirty minutes. The informant had apprised the officers of the general layout of the defendants' residence and of their ownership of a dangerous dog and numerous weapons. The agents observed Ann Sakellson in the residence but believed Jeff was absent because his vehicle was not present.

The defendants resided on the second floor of a two-family duplex. Each apartment in the duplex had a separate enclosed porch, mailbox, house number, and entrance. The enclosed porch to the Sakellson residence had a storm door which was closed but unlocked. Inside the porch was the main door to the residence, which was open. Located adjacent to the main door was a single doorbell. Beyond the main door was a carpeted vestibule and stairway leading to the second floor. At the top of the stairs a short hallway lead to the kitchen and living room. The doors to both rooms were open.

The officers entered through the storm door and proceeded across the porch and through the open main door. At no time did they knock, ring the doorbell, or otherwise announce their presence. The officers climbed the stairs and at the open entrance to the living room observed Ann seated and talking on the telephone. One of the officers testified that he knocked twice at the entrance to the living room, displayed his badge, and stated he had a search warrant. Ann claimed the officers entered the living room unannounced. The trial court found that the officers announced their presence and authority before entering the living room.

Following a search of the residence the officers seized a quantity of marijuana and charged the defendants with possession of a controlled substance with intent to deliver in violation of North Dakota Century Code §§ 19–03.1–23 and 19–03.1–05. Upon the defendants' motion the district court suppressed all evidence seized during the search of the residence on the ground that the officers' failure to announce their presence and purpose before entering through the main door to the residence violated NDCC § 29–29–08.

## 2. SECTION 29–29–08

Section 29–29–08 provides that an officer executing a search warrant may break open an outer or inner door or window of a house, or any part of the house if, after notice of his authority and purpose, he is refused admittance.

Section 29–29–08 is a codification of the common law rule that police may break

into a home only after announcing their presence and purpose in seeking entry.[1] *See, e.g., Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *People v. Rosales,* 68 Cal.2d 299, 66 Cal. Rptr. 1, 437 P.2d 489 (1968); *see generally,* Annotation, 70 A.L.R.3d 217 (1976); La-Fave, Search and Seizure, § 4.8(a) (1978). The primary policies underlying the knock-and-announce rule are the protection of privacy in the home and the prevention of violent confrontations. *State v. LaPonsie,* 136 Ariz. 73, 664 P.2d 223 (1982); *State v. Cleveland,* 118 Wis.2d 615, 348 N.W.2d 512 (1984); *see generally* LaFave, *supra.*

The State initially argues that NDCC § 29–29–08 did not require the officers to announce their presence before entering through the main door because the landing and stairway immediately inside the main door were not an "integral" part of the defendants' residence. The trial court concluded otherwise and this finding will not be reversed if it is sufficiently supported by competent evidence. *State v. Ronngren,* 361 N.W.2d 224 (N.D.1985).

█ The record demonstrates that the vestibule and stairway were not a common area open to the public. *See contra United States v. Perkins,* 286 F.Supp. 259 (D.C. D.C.1968), *aff'd* 432 F.2d 612 (D.C.Cir.1970) (entry through open door from common hallway of public rooming house not a breaking). Rather, it was a private area of the defendants' home, as evidenced by the clothing and personal effects they kept there. Thus there was sufficient evidence to support the finding that the main door was the threshold to the defendants' home therefore requiring the officers to comply with NDCC § 29–29–08.

The State next claims that the officers' unannounced entry through the open door did not frustrate the policies behind § 29–29–08, and thus substantially complied with that statute, because their entry only "minimally infringed upon any reasonable expectation of privacy of the defendants."

It is true that in certain cases leaving a door open may reduce the occupant's expectation of privacy. An open door may invite the gaze of curious passers-by and lessen the reasonable anticipation of privacy in the home. No such circumstances abide in this case. Whether a door is open through simple inadvertence or design, it should not subject an occupant to the unannounced entry of the uninvited. Simply because one forgot, or purposely failed to close a door, does not create a reasonable expectation of an uninvited, unannounced entry. Consequently, an officer should ordinarily declare his presence and purpose so that a resident may "know who is entering, why he is entering, and [have] a few seconds to prepare for entry." *State v. Valentine,* 264 Or. 54, 504 P.2d 84, 87 (1972), *cert. denied,* 412 U.S. 948, 93 S.Ct. 3001, 37 L.Ed.2d 1000 (1973).

Furthermore, an unannounced entry by officers increases the potential for violence by provoking defensive measures a surprised occupant would otherwise not have taken had he known that the officers possessed a warrant to search his home.[2] *State v. Carufel,* 112 R.I. 664, 314 A.2d 144 (1974); *see also Miller v. United States,* 357 U.S. 301, 313, n. 12, 78 S.Ct. 1190, 1198, n. 12, 2 L.Ed.2d 1332 (1958) (announcement is safeguard for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder); *e.g.,*

---

1. The common law rule is traceable to *Semayne's Case,* 77 Eng.Rep. 194 (K.B.1603), where the court stated:

   "In all cases where the King is a party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or do other execution of the King's process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming and to make request to open the door."

   For a discussion of the history and development of this rule see Blakey, The Rule of Announcement and Unlawful Entry: Miller v. United

States and Ker v. California, 112 U.Pa.L.Rev. 499 (1964); Sonnenreich & Ebner, No-Knock and Nonsense, An Alleged Constitutional Problem, 44 St. John's L.Rev. 626 (1970); Note, 7 Loy.L.A.L.Rev. 162 (1974); Note, 80 Yale L.J. 139 (1970).

2. NDCC §§ 12.1–05–06 through –08 provide that the use of force, including deadly force, in defense of premises is justified if it is used to prevent an unlawful entry and trespasses in and upon the premises.

*State v. Housley,* 322 N.W.2d 746 (Minn. 1982) (two officers serving search warrant shot by householder who mistook them for burglars); *State v. Cessna,* 170 Iowa 726, 153 N.W. 194 (1915).

Consequently, the policy reasons for officers executing a warrant to announce their presence and purpose are not advanced by allowing them to enter unannounced through an open door. To condone such entries would make an open door to a home an invitation for police officers with a search warrant to enter without permission. This is inconsistent with the traditional homage we pay to the right to seek shelter in our homes free from unreasonable governmental intrusion. *See Silverman v. United States,* 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961).

■ Rather, we hold that "breaking" includes, under ordinary circumstances, an entry made without permission. *See State v. LaPonsie, supra; People v. Buckner,* 35 Cal.App.3d 307, 111 Cal.Rptr. 32 (1973); *People v. Lawrence,* 25 Cal.App. 213, 101 Cal.Rptr. 671 (1972); *People v. Norton,* 5 Cal.App.3d 955, 86 Cal.Rptr. 40 (1970); *People v. Arias,* 6 Cal.App.3d 87, 85 Cal. Rptr. 479 (1970); *People v. Beamon,* 268 Cal.App.2d 61, 73 Cal.Rptr. 604 (1968) (entry through open door is a breaking); *and see Keiningham v. United States,* 287 F.2d 126 (D.C.Cir.1960); *People v. Godinas,* 176 Colo. 391, 490 P.2d 945 (1971); *State v. Darroch,* 8 Or.App. 32, 492 P.2d 308 (1971), *aff'd sub nom. State v. Valentine, supra,* (breaking means entry without permission). *See generally* LaFave, *supra* at 127. Requiring officers to knock and announce before entering through an open door promotes the policies of privacy and non-confrontation without unreasonable obstruction of law enforcement. "Breaking" includes entry by means of passkey as well as the opening of a closed but unlocked door. *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1968); *Sabbath*

*v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). Entry through an open doorway is sufficiently similar to warrant equivalent treatment.

Defining "breaking" as an entry made without permission is also consistent with the rule that forcible entry is not necessary for a breaking under our burglary statute. NDCC § 12.1–22–02; *State v. Olson,* 290 N.W.2d 664 (N.D.1980); *see also Sabbath v. United States, supra; People v. Rosales, supra;* Blakey, The Rule of Announcement And Unlawful Entry: *Miller v. United States* and *Ker v. California,* 112 U.Pa.L.Rev. 449, 505 (1964) (what would be breaking of the outer door in burglary is equally breaking by the sheriff).

■ Nor does compliance with the knock-and-announce requirement hinder law enforcement. Under the proper circumstances a no-knock warrant may be issued. NDCC § 29–29–08; § 19–03.1–32. Furthermore, even without a no-knock warrant, announcement prior to entry may be excused under certain exigent circumstances.[3] The State does not maintain that such exigencies existed in this case.

■ In sum, defining a nonconsenual entry through an open main door as a breaking under ordinary circumstances, fully promotes the policy considerations behind the announcement requirement: protection of privacy is maximized and potential for violence is minimized. The burden of complying is slight. It can hardly be questioned that the right to privacy is one of the unique values of our society and protected by the fourth amendment. *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 196, 93 L.Ed. 153 (1948). It also enjoys the protection of the statutory requirement of prior notice of police authority and purpose for entering our homes. That requirement "should not be given grudging application."[4] *Miller v. United*

---

**3.** Generally, officers are excused from the usual notice requirements when (1) reasonably acting to prevent destruction or disposal of evidence; (2) when notice would "increase the peril of the officers or others;" and (3) when notice would

be a useless gesture. *See generally,* LaFave, *supra* pp. 131–138; Annot. 17 A.L.R.4th 302.

**4.** We recognize there is contrary authority, *i.e.,* unannounced entry through an open door is not a breaking. *See United States v. Valenzuela,* 596

*States, supra* at 357 U.S. at 313, 78 S.Ct. at 1197–1198.

■ Here all that the officers had to do was ring the doorbell and announce their purpose. The trial court correctly deemed their failure to do so did not comply, substantially or otherwise, with NDCC § 29–29–08.

## 3. REMEDY

The State argues that although announcement before entry is required by NDCC § 29–29–08, it is not constitutionally mandated. The State therefore maintains that suppressing the evidence seized in the search of the defendants' home is neither the necessary nor appropriate remedy for the officers' failure to abide by § 29–29–08. We disagree.

■ The rule of announcement is more than a statutory requirement. It is a constitutional imperative implicit in the fourth amendment prohibition against unreasonable searches and seizures. *Ker v. California, supra.* As stated in *Ker v. California, supra* at 347 U.S. at 38, 83 S.Ct. at 1632:

> "Since the petitioners' federal constitutional protection from unreasonable searches and seizures by police officers is here to be determined by whether the search was incident to a lawful arrest, we are warranted in examining the arrest to determine whether, notwithstanding its legality under state law, *the method of entering the home may offend federal constitutional standards of reasonableness and therefore vitiate the legality of an accompanying search....*" [Emphasis added.]

Although *Ker* involved a warrantless entry for the purposes of making an arrest, we believe it is equally applicable to the execution of a search warrant. *State v. Carufel, supra; see generally* LaFave, *supra* at 123–124. A police officer's method

of entry in executing a knock-and-announce search warrant is therefore subject to fourth amendment standards of reasonableness. *Ker v. California, supra; United States v. Baker,* 638 F.2d 198 (10 Cir. 1980); *People v. Rosales, supra; State v. Dusch,* 259 Ind. 507, 289 N.E.2d 515 (1972); *People v. Floyd,* 26 N.Y.2d 558, 312 N.Y. S.2d 193, 260 N.E.2d 815 (1970); *State v. Rhodes,* 54 N.C.App. 193, 282 S.E.2d 809 (1981); *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971); *State v. Carufel, supra; State v. Coyle,* 95 Wash.2d 1, 621 P.2d 1256 (1980); *State v. Cleveland,* 118 Wis.2d 615, 348 N.W.2d 512 (1984); *see generally* Sonnenreich & Ebner, No-Knock and Nonsense, An Alleged Constitutional Problem, 44 St. John's L.Rev. 626, 643 (1970).

■ While an unannounced entry may be reasonable under special circumstances, no such circumstances are present in this case. *See* footnote 3. Consequently, the officers' unannounced entry in violation of NDCC § 29–29–08 also violated both Article I, § 8, of the North Dakota Constitution and the fourth and fourteenth amendments to the United States Constitution thereby necessitating the suppression of the evidence obtained. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Phelps,* 286 N.W.2d 472 (N.D.1979); *see, e.g., Commonwealth v. DeMichel, supra; State v. Carufel, supra.*

■ The State also invites this Court to adopt a "good faith" exception to the exclusionary rule. The State asserts that even if the defendants' constitutional rights were violated, the officers' conduct was reasonable and in good faith. Consequently, the State claims that exclusion of the evidence is an inappropriate remedy.

The State cites *United States v. Williams,* 622 F.2d 830 (5 Cir.1980), *cert. den.,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114

F.2d 1361 (9 Cir.1979); *cert. den.,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979); *United States v. Morell,* 524 F.2d 550 (2 Cir.1975); *United States v. Williams,* 351 F.2d 475 (6 Cir.1965), *cert. den.,* 383 U.S. 917, 88 S.Ct. 910, 15 L.Ed.2d 671 (1966); *State v. Rudisill,* 20 N.C.App. 313,

201 S.E.2d 368 (1973); *State v. Steingraber,* 296 N.W.2d 543 (S.D.1980). These decisions are not binding precedent, and, because they do not advance the policies of the announcement rule, are not persuasive. Therefore, we decline to follow them.

(1980), as authority for adopting a good faith exception to the exclusionary rule. *Williams* held that:

"[E]vidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." 622 F.2d at 840.

The *Williams* court went on to emphasize that:

"[T]he belief, in addition to being held in subjective good faith, must be grounded in an objective reasonableness. It must therefore be based upon articulable premises sufficient to cause a reasonable, and reasonably trained, officer to believe he was acting lawfully." 622 F.2d at 841, n. 4a.

The State argues that the officers' conduct was reasonable, taken in good faith, and therefore the *Williams* "good faith" exception should allow use of the evidence seized.

The rationale for the *Williams* good faith exception appears to be to ameliorate the harshness of the exclusionary rule in a situation where there is but a technical violation by police. Here it was no mere technicality that the veteran officers, aware of the availability of no-knock warrants, well briefed on the layout of the premises, and without belief there were exigent circumstances, entered through the open main door without knocking or ringing the doorbell. Even under *Williams* the officers' conduct was not objectively reasonable.[5]

We hold that under the facts in this case the officers' unannounced entry through an open door to execute a search warrant did not comply with § 29-29-08 and consequently constituted an unreasonable search and seizure in violation of Article I, § 8, of the North Dakota Constitution and the fourth and fourteenth amendments of the United States Constitution. Therefore, the district court's suppression order is affirmed.

MESCHKE and GIERKE, JJ., concur.

ERICKSTAD, Chief Justice.

I respectfully dissent.

The State of North Dakota appeals from the order of the District Court of Cass County suppressing evidence seized during the search of the defendants' residence. I would reverse and remand for trial.

Because much of the case law relied upon in the majority opinion authored by Justice Levine is based upon much more aggravated facts of intrusion and invasion of privacy than that involved in this case and often involves entry without a search warrant, which is also not the situation in this case, I think it important to describe in detail the facts of this case.

On June 15, 1984, at approximately 11:40 a.m., Special Agent David Caulfield of the North Dakota State Drug Enforcement Unit and Deputy Krogh of the Cass County Sheriff's Office executed a search warrant at the residence of Gordon Richardson and Jack Lind. The result of the search was the recovery of approximately a pound and a half of marijuana. At this time Richardson agreed to cooperate with the officers and indicated that he had received the marijuana from Jeff Sakellson who lived at 830 11th Avenue North in Fargo. Richardson stated that in the past five months he had purchased marijuana, in one and a half pound quantities, from Jeff Sakellson approximately twenty times. Usually Richardson would pick up the marijuana at the Sakellson residence, but sometimes it was delivered to the Richardson residence by either Jeff Sakellson or his wife Ann Sakellson.

Richardson also indicated that Jeff Sakellson had a mean dog which might attack

---

5. The State asserts that the reasoning for adopting a good faith exception to the exclusionary rule found in *United States v. Leon*, 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should be followed in utilizing such an exception in this case. However, under *Leon*, as in *Williams*, the officers' conduct must be objectively reasonable, *Leon*, 104 S.Ct. at 3421. In this case it was not. Consequently, *Leon* is of no assistance to the State.

and a number of weapons which he would not hesitate to use.

Richardson was next escorted to the Cass County Sheriff's Office. Through a series of recorded phone calls made by Richardson to the Sakellson residence, both Ann and Jeff Sakellson indicated that they had more marijuana for sale but that Jeff would not be able to drop it off at Richardson's residence until approximately 8:00 p.m. that evening.

Agent Caulfield then prepared an affidavit for a search warrant and was granted a "knock-and-announce" search warrant for the Sakellson residence at 5:13 p.m. No attempt was made by Agent Caulfield to obtain a "no-knock" search warrant provided for in Section 29–29–08, N.D.C.C.[1] Agent Caulfield proceeded to the Sakellson residence where he, along with agents Roy and Smith of the North Dakota Drug Enforcement Unit and Officer Krogh, set up surveillance. Officer Mueller of the Cass County Sheriff's Office arrived a few minutes later in uniform. While the officers watched the Sakellson residence, Ann Sakellson was observed sweeping the outer upstairs porch. They also noticed that the vehicle belonging to Jeff Sakellson was not present. This lead them to believe that he might not be at the residence. At approximately 6:10 p.m., after waiting twenty or thirty minutes, the officers entered the residence to execute the search warrant.

The Sakellson residence is part of a two-family duplex with one family unit on the ground floor and the Sakellson residence on the upper floor. On the front side of the duplex, facing the street, are two separate porch doors, side by side, with the street numbers to the respective residences above each door. Above the door on the

left is the number 830, the street address of the Sakellson residence and the address indicated in the search warrant. The number 832 is above the porch door on the right.

Agent Roy, who was in possession of the search warrant, lead the way up a short set of stairs on the outside of the porch to the duplex. Without knocking or announcing their presence, they entered through the partially opened porch door into the porch of the Sakellson residence at number 830. Once inside the porch, the officers noticed that the "main door" of the residence was open. The officers testified that they did not notice the doorbell to the left of the main door. Five or six feet directly beyond the main door was another door which was closed. To the left of this door was a carpeted stairway leading upstairs. The officers, without knocking or in any way announcing their presence, proceeded through the main doorway and up the stairs.[2] At the top of the stairs, Agent Roy turned to the right and into a short hallway. After turning into the hallway, there was a door to the left which led to the kitchen area and a door to the right which led to the living room. Both doors were open.

At this point, there is some conflicting testimony. Agent Roy testified that he stopped and made a series of knocks on the left side of the framing of the living room door; that he then saw Ann Sakellson sitting on the couch on the far side of the room talking on the phone and that he called out, "Mrs. Sakellson." After getting no response, Agent Roy made another series of knocks which he testified did get the attention of Ann Sakellson. As Ann Sakellson hung up the phone, Agent Roy,

1. Section 29–29–08, N.D.C.C., provides as follows:

"*Execution of warrant—Use of force.*—An officer directed to serve a search warrant may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, (a) if, after notice of his authority and purpose, he be refused admittance, or (b) without notice of his authority and purpose if a district judge issuing the warrant has inserted a direction therein that the officer executing it

shall not be required to give such notice. The district judge may so direct only upon written petition and proof under oath, to his satisfaction, that the property sought may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, if such notice were to be given."

2. The trial court concluded that the stairway was an "integral" part of the home.

followed by the other officers, entered the room holding up his badge, announced that they were police officers with a search warrant, and handed Ann Sakellson a copy of the warrant.

Ann Sakellson testified that she was talking on the phone to a friend when she looked up and saw the officers entering her living room, that the officers then identified themselves and handed her a copy of the search warrant. She stated that she heard no doorbell ring, no knock on the downstairs main door, and no knock on the living room door.

The officers then proceeded to search the apartment. A total of 43 items were seized, including several bags of marijuana, amounting to more than ten pounds, several handguns, shotguns and rifles (some of which were loaded and ready to fire), a UZI semi-automatic machine gun, a TNT detonator box, a list of "pot" fields within North Dakota, a five pound scale and 200 gram weight, a certain amount of cash, and a number of receipts. During the search Jeff Sakellson arrived at the residence and was stopped by one of the officers before entering the apartment.

Jeff and Ann Sakellson were arrested and charged with possession of a controlled substance with intent to deliver in violation of Section 19–03.1–23 and Section 19–03.1–05, N.D.C.C.

The defendants moved to suppress all evidence seized during the execution of the search warrant arguing the officers (1) violated Section 29–29–08, N.D.C.C., by not knocking and announcing their presence before entering through the "main door," and (2) violated a part of Article I, Section 8 of the North Dakota Constitution.

The trial court granted Sakellson's motion to suppress, concluding that the officers violated Section 29–29–08, N.D.C.C., by not knocking and announcing their authority before walking through the "main door" of the Sakellson residence and entering an "integral" part of the home, and that such a violation required the suppression of all evidence seized during the search. In reaching this conclusion the trial court noted that it was not issuance of

the search warrant that was at issue, but rather the behavior of the officers in executing the search warrant. The trial court also concluded that the good faith exception to the exclusionary rule adopted in *United States v. Leon,* 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), did not apply because *Leon* dealt with probable cause and probable cause is admitted in this case.

The first question that must be addressed on appeal is whether or not the behavior of the officers in not knocking and announcing their presence and authority before entering into the residence through an open door violated Section 29–29–08, N.D.C.C.

While this is a question of first impression in North Dakota, several other courts, when interpreting like statutes, have addressed this issue. *United States v. Valenzuela,* 596 F.2d 1361 (9th Cir.1979), *cert. den.* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979) (unannounced entry through open garage door where officer observed occupants was proper because entry through an open door is not a "breaking"); *United States v. Morell,* 524 F.2d 550 (2nd Cir. 1975) (remanded to the district court to determine if the door was open, thus making announcements of purpose and authority unnecessary under 18 U.S.C. § 3109); *United States v. Williams,* 351 F.2d 475 (6th Cir.1965), *cert. den.* 383 U.S. 917, 88 S.Ct. 910, 15 L.Ed.2d 671 (1966) (unannounced entry through open apartment door where agent saw defendant sitting on a couch talking on the telephone and where defendant did not see agents was not unreasonable); *State v. Steingraber,* 296 N.W.2d 543 (S.D.1980) (officer's announcement, made simultaneously with his entry into the living room, constituted substantial compliance with the statute); *State v. Rudisill,* 20 N.C.App. 313, 201 S.E.2d 368 (1973) (officer's unannounced entry through open door, made as an occupant was about to come out of the door, was not a violation of the statute; requiring officers to knock would be to require a vain act).

The federal statute which corresponds to Section 29–29–08, N.D.C.C., is 18 U.S.C.

§ 3109.[3] The Supreme Court in *Sabbath v. United States*, 391 U.S. 585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828, 854 (1968), *reh. den.* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968), stated:

> "An unannounced intrusion into a dwelling—what § 3109 basically proscribes—is no less an unannounced intrusion whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door." [Footnote omitted.]

*Conspicuous by its absence is an unannounced entry by an officer through an open door.* Federal courts, when interpreting Section 3109, have repeatedly held that an officer's act of walking through an open door in order to execute a search warrant is not a "breaking" and, as such, not a violation of the statute. *Valenzuela*, 596 F.2d at 1365; *Morell*, 524 F.2d at 556; *Williams*, 351 F.2d at 477. Consistent with these decisions, I believe that an officer's unannounced entry through an open door in order to execute a valid search warrant is not a "breaking" under Section 29–29–08, N.D.C.C.

I realize that the Supreme Court of California has held that officers' entry through an open door violated a similar California statute. *People v. Bradley*, 1 Cal.3d 80, 81 Cal.Rptr. 457, 460 P.2d 129 (1969). *Bradley*, however, is clearly distinguishable from the instant case in that the officers' entry occurred at 3:15 a.m., and it was without a search warrant. *See* footnote 1, 81 Cal.Rptr. at page 461, 460 P.2d at page 133 of *Bradley* for the Court's limitation of its holding to the specific facts of that case. I also acknowledge, but reject, the holdings of the intermediate appellate courts of California, *People v. Davis*, 105 Cal.App.3d 356, 164 Cal.Rptr. 384 (1980); *People v. Baldwin*, 62 Cal.App.3d 727, 133 Cal.Rptr. 427 (1976); *People v. Beamon*, 268 Cal. App.2d 61, 73 Cal.Rptr. 604 (1968), which hold that an officer's entry through an open door is a "breaking." My contrary view is supported by the language of our statute, which reads: "An officer directed to serve a search warrant may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, (a) if, after notice of his authority and purpose, he be refused admittance...." The statute does not speak of notice of authority and purpose before *entry*, rather it speaks of notice of authority and purpose before *breaking....* *See United States v. Conti*, 361 F.2d 153, 157 (2d Cir.1966) (" 'breaking' in the statute means forcible entry"). I believe that my view of our statute which is similar in language to the California statute better balances the public and private interests.

Accordingly, I believe the officers did not violate Section 29–29–08, N.D.C.C., while executing the search warrant.

The second issue we must consider, however, is, in my view, a more difficult one. That is whether or not, under the circumstances described herein, the officers violated Article I, Section 8 of the North Dakota Constitution.

Although at the trial court level it was not contended that the officers violated the Fourth Amendment of the United States Constitution, I believe that it is pertinent to consider that amendment in the light of its similarity in language to Article I, Section 8 of the North Dakota Constitution.[4]

---

**3.** 18 U.S.C. Section 3109 is identical in its relevant terms to Section 29–29–08, N.D.C.C. (*see* footnote 1 *infra*), and provides as follows:

"*§ 3109. Breaking doors or windows for entry or exit*

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

**4.** "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." N.D. Const. art. I, § 8.

"The right of the people to be secure in their persons, houses, papers and effects, against

In light of the similarity in language, I think it appropriate to examine decisions of the federal courts to determine the construction that those courts have placed upon the Fourth Amendment.

I agree with the Levine opinion that the method of entry of a police officer executing a search warrant is subject to Fourth Amendment standards of reasonableness. However, I do not agree that an officer's unannounced entry through an open door when executing a search warrant is necessarily unreasonable under the Fourth Amendment. *United States v. Williams*, 351 F.2d at 477. *See also, People v. Wolgemuth*, 69 Ill.2d 154, 13 Ill.Dec. 40, 370 N.E.2d 1067 (1977) (a careful reading of *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) reveals that the knock and announce rule is not, in the view of the Supreme Court of Illinois, constitutionally mandated); and *People v. Boykin*, 65 Ill.App.3d 738, 22 Ill.Dec. 614, 382 N.E.2d 1369 (Ill.App.1978).

The primary purposes of the knock and announce rule are to protect the privacy of persons in their homes and to prevent potentially violent confrontations. *Sabbath v. United States*, 391 U.S. at 589, 88 S.Ct. at 1758, 20 L.Ed.2d at 833 (1968). *See also, State v. Steingraber*, 296 N.W.2d at 545. Under the circumstances of this case, where all doors were open and thus expectation of privacy was reduced, *Commonwealth v. Perry*, 254 Pa.Super. 549, 386 A.2d 86, 88 (1978), and the officers had reason to believe those being searched had a number of weapons which could be used in violence, the avoidance of violence and the maintenance of privacy were not thwarted by the unannounced entry at the lower entrance level to the upper living quarters. In fact, it would appear that the failure to knock and announce at the lower level of the home perhaps prevented the

use of a veritable arsenal of weapons, including a semi-automatic machine gun.

Keeping in mind all the circumstances of this case, I believe the officers' method of entry was reasonable under the Fourth Amendment and I perceive no reason for not finding it so under Article I, Section 8 of our State Constitution. This is consistent with our reasoning in *State v. Iverson*, 187 N.W.2d 1 (N.D.1971).[5]

Justice Levine relies on *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, to support the view that an announcement by police officers before entering through an open door to execute a search warrant is a "constitutional imperative implicit in the Fourth Amendment prohibition against unreasonable searches and seizures." *Ker*, however, is clearly distinguishable in that it involved officers, without a search warrant, entering an apartment by use of a passkey. Here, the officers had a search warrant and entered through open doors.

The facts in *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) also make it easily distinguishable. In *Miller*, officers, without a search warrant, broke a chain lock on the defendant's door and forced the door open at 3:45 a.m. In addition to the breaking, it is especially offensive to enter a person's home in the middle of the night without announcing and securing a special warrant.

*Sabbath v. United States, id.* (officers opened an unlocked door without announcing their purpose); *People v. Rosales*, 68 Cal.2d 299, 66 Cal.Rptr. 1, 437 P.2d 489 (1968) (unannounced entry by officer without a warrant); *State v. Cleveland*, 118 Wis.2d 615, 348 N.W.2d 512 (1984) (officers opened an unlocked door without announcing their presence); *State v. Valentine*, 264 Or. 54, 504 P.2d 84 (1972) (officers

---

unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

**5.** "'[R]easonable ground to believe' the person arrested has committed a felony satisfies the

'probable cause' requirement of Section 18 of the North Dakota Constitution [Art. I, § 8, renumbered Constitution], as its language is virtually identical to that of the Fourth Amendment to the U.S. Constitution." *State v. Iverson*, 187 N.W.2d at 21.

pushed open a closed but unlatched door without announcing their presence or purpose); *State v. Carufel*, 112 R.I. 664, 314 A.2d 144 (1974) (officers announced their presence and purpose while pushing open *the main door* of an apartment that was two inches ajar); and *Keiningham v. United States*, 287 F.2d 126 (D.C.Cir.1960) (officers opened a closed door without knocking or announcing their presence), relied upon by Justice Levine, are obviously distinguishable.

As I believe that an officer's unannounced entry through an open door is not a violation of Section 29–29–08, N.D.C.C., and under the circumstances of this case is not a violation of the Fourth Amendment of the United States Constitution or of Article I, Section 8 of our State Constitution, I would reverse the order of the trial court and remand this case for trial.

Please forgive this final appendage. I should have included this subject matter earlier in this opinion, but it may be more meaningful here. Justice Levine asserts for the majority of our Court that "[w]hether a door is open through simple inadvertence or design, it should not ... subject an occupant to the unannounced entry of the uninvited." I have great empathy for that philosophy and were this a utopian society where all people respected that philosophy we would likely have no need for police officers and search warrants, but until we have reached that state of enlightenment, I think we may have to afford our law enforcement officers more leeway in acting to protect us from those who have no respect for our laws and may feel no apprehension about entering our homes unannounced for any purpose at any time.

Finally, even if the conduct here condemned by the Levine opinion were violative of either the United States Constitution or the State Constitution, which I contend it was not, it should not justify the application of the exclusionary rule, so as to result in suppression of the evidence found through the use of a valid search warrant by officers acting in good faith.

In *United States v. Leon*, 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court adopted the "good-faith exception" to the exclusionary rule. The Supreme Court in *Leon* concluded that the exclusionary rule should not apply when officers conduct a search in good faith even though a subsequent finding shows there was not probable cause to support the issuance of the search warrant. *Leon*, 104 S.Ct. at 3421. *See also State v. Thompson*, 369 N.W.2d 363 (N.D.1985). While the case now before our Court involves the issue of the propriety of the service and execution of a search warrant, as opposed to the issue of the existence of probable cause for issuing a search warrant, I believe the good faith exception to the exclusionary rule should be equally applicable. When determining whether or not the good faith exception to the exclusionary rule should apply to a particular case, the appropriate test is whether or not the activity of the police officers was "objectively reasonable." *Leon*, 104 S.Ct. at 3421; *Thompson*, 369 N.W.2d at 372. Considering all the circumstances of this case (the main door to the apartment was wide open, the officers stopped at the top of the stairs and knocked before entering the main living area of the apartment, and the potentially violent nature of the defendants), I believe the officers' execution of the search warrant was objectively reasonable. In my view the time has come to apply the *Leon* reasoning in North Dakota. Accordingly, the evidence obtained through the search should not be suppressed.

VANDE WALLE, Justice, concurring specially.

I agree that the order suppressing the evidence should be affirmed. I believe that under the facts of this particular case the unannounced entry to execute a search warrant was unreasonable. I do not intend to cite at length cases which support my position nor do I intend to attempt to distinguish cases which appear to hold to the contrary. The opinion of Justice Levine for the majority and the opinion of the Chief Justice in dissent have satisfactorily set

forth the cases which represent the respective points of view. It is sufficient for my purposes to note that cases from other jurisdictions, both State and Federal, can be found to support nearly any position on this subject. Some of them may be distinguishable on their facts.

I believe an open door may under some circumstances justify an unannounced entry to serve a warrant even though the warrant is not a "no-knock" warrant and no exigent circumstances exist. Therefore, I do not join the majority opinion insofar as it holds that in every instance an entry through an open door to a house constitutes an impermissible "breaking" absent an announcement by the law-enforcement officers of their presence and purpose prior to the entry. On the other hand, I cannot agree with the dissenting opinion that under the facts of this case the "open" door from the porch to the hallway with the stairs leading to the living area was an invitation to the officers to enter without announcing their presence and purpose.

The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, and Article I, Section 8, of the North Dakota Constitution prohibit unreasonable searches and seizures. Under the facts of this case, as determined by the trial court, it was unreasonable for the officers to enter the Sakellsons' residence without announcing their presence and purpose. There were three doors involved in this instance, all of them apparently "open" to various extents. It occurs to me, and should have occurred to the officers, that at some place in entering through the first two doors and climbing the stairs the officers should have announced their presence and purpose; however, the trial court found that it was not until they had climbed the stairs and were at yet two more doors, leading into the kitchen and living room of the apartment, that the officers knocked and announced their presence.

One of my primary concerns in this case is with the question of whether or not the exclusionary rule should be applied. The issues were argued to us in the nature of a violation of the statute, Section 29-29-08, N.D.C.C. Were this merely a question of a violation of a statute, as opposed to a constitutional protection, I would not apply the exclusionary rule because I do not believe the exclusionary rule is or should be an automatic result of every such violation. However, because the violation in this instance is so apparently that of a basic constitutional protection, i.e., the protection against unreasonable searches, I agree that the application of the exclusionary rule is proper.