STATE OF NEBRASKA, APPELLANT, V. KENT H. PIERSON, APPELLEE.
472 N.W.2d 898

Filed August 9, 1991.   No. 91-446.

James S. Jansen, Douglas County Attorney, and Donald L. Schense for appellant.

Bill Bracker for appellee.

WHITE, J.

The State has requested summary review of the trial court's order which granted the defendant's motion to suppress evidence obtained in a search. The State's request, filed pursuant to Neb. Rev. Stat. § 29-824 (Reissue 1989), argues

that the trial court's finding that the evidence should be suppressed is clearly erroneous.

On October 17, 1990, members of the Omaha Police Division's emergency response unit (ERU), which assists in serving search warrants in suspected high-risk situations, entered the backyard of a home at 1906 Military Avenue in Omaha, Nebraska. The ERU team leader, Sgt. Timothy Conahan, stated that he did not see or handle the warrant, but he believed the ERU was assisting the Federal Bureau of Investigation in serving a warrant for a video poker game or slot machine. The FBI's information was allegedly based on electronic surveillance of a residence in Waterloo, Nebraska, in connection with an ongoing narcotics investigation.

The warrant was served at 7 a.m. The ERU chose to gain entry to the house, believed to be a clubhouse for Hell's Angels, through the rear. This required the team to climb a 6-foot chain link fence because they were unable to cut the padlock on the gate. After climbing the fence, the members were allegedly threatened by three barking Rottweiler guard dogs. The team members shot and killed one dog to prevent it from attacking an officer. When Conahan and the team reached the back door, Conahan said, he heard voices inside the residence and announced, "Omaha Police, search warrant, everybody down." In a matter of seconds, the officers then kicked in the door and the ERU entered the residence.

A second search warrant was issued, on October 17, 1990, for the Military Avenue house, except that the references to the gambling device were deleted and information obtained during the first search was added. Apparently, appellee Kent H. Pierson's home, at 3811 South 35th Street in Omaha, was also searched.

The defendant was charged by information on October 31, 1990, with unlawful possession with intent to deliver a controlled substance (methamphetamine), use of a firearm to commit a felony, and possession of a firearm by a felon. His motion to suppress alleged that the evidence was obtained based on an improperly executed search warrant and that the application for the warrant lacked sufficient, reliable information for the issuing magistrate to have found probable

cause of criminal activity. Pierson asserted that the information upon which the warrant was obtained was based on an illegal wiretap and upon information which was sealed and should not have been disclosed. He also alleged that the search warrant for a gambling machine was a pretext to search the residence in connection with the ongoing narcotics investigation.

The district court granted the motion to suppress, finding that there was no evidence that any officers attempted to request entry through the front door of the house, that anyone in the house refused a request to enter, or that anyone in the house was given an opportunity to refuse entry. The court held that the task force violated the express provisions of both state and federal statutes governing the serving of search warrants. The exigent circumstances claimed by the officers were created by the officers' own actions in scaling the fence and entering a private yard where they knew they would be confronted by three large guard dogs. The trial court stated, "Any emergency could have been avoided by walking up to the front door, knocking, and asking permission to enter." The trial court did not accept the State's argument that the officers were acting in good faith, thus bringing the search under the "good faith" exception to the exclusionary rule. Noting that the record failed to support this contention, the court stated, "Ignorance, for which there is no excuse, does not give rise to good faith." The motion to suppress was granted and the evidence suppressed.

In this review, the State assigns as error the trial court's suppression of evidence seized pursuant to a federal warrant which was served in a no-knock fashion due to exigent circumstances.

In reviewing a trial court's ruling on a motion to suppress, this court will uphold the trial court's ruling, absent a finding that the ruling was clearly erroneous. *State v. Patterson*, 237 Neb. 198, 465 N.W.2d 743 (1991).

It is first noted that search warrants may be issued by an impartial magistrate, upon a showing of "probable cause," which has been defined as

" 'a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," [citation

omitted] that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.' "
*State v. Parmar*, 231 Neb. 687, 696, 437 N.W.2d 503, 509 (1989).

It has also been held that in determining the validity of a search warrant, the reviewing court may consider only information brought to the attention of the issuing magistrate. *State v. Hodge and Carpenter*, 225 Neb. 94, 402 N.W.2d 867 (1987).

Unreasonable searches and seizures are proscribed by the 4th amendment to the U.S. Constitution, and this prohibition is enforceable against the states through the 14th amendment. *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963), citing *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). As noted in *State v. Vrtiska*, 225 Neb. 454, 460, 406 N.W.2d 114, 119 (1987), *cert. denied* 484 U.S. 863, 108 S. Ct. 180, 98 L. Ed. 2d 133, "Generally, seizure of property is permissible under a validly authorized search warrant, under exigent circumstances, or under some other recognized exception to the warrant requirement."

Searches must be reasonable, which has been interpreted to mean that "absent exigent circumstances, law enforcement officers executing a search warrant must first announce their presence and purpose and then give those within the premises to be searched sufficient time to voluntarily permit the officers to enter." *State v. Watkinson*, _____ Wis. 2d _____, _____, 468 N.W.2d 763, 764 (1991), citing *Ker v. California, supra*.

In *Ker*, the U.S. Supreme Court outlined examples of exigent circumstances which may relieve law enforcement officers of the announcement requirement before executing a warrant: imminent destruction of vital evidence, the need to rescue a victim in peril, or an increase in peril to the officer.

Both Nebraska and federal law define the circumstances under which a search warrant is to be served. Neb. Rev. Stat. § 29-411 (Reissue 1989) states:

> In executing a . . . search warrant . . . the officer may break open any outer or inner door or window of a dwelling house or other building, if, after notice of his office and purpose, he is refused admittance; or without giving notice of his authority and purpose, if the judge or magistrate issuing a search warrant has inserted a direction therein that the officer executing it shall not be required to give such notice . . . . The judge or magistrate may so direct only upon proof under oath, to his satisfaction that the property sought may be easily or quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, if such notice be given . . . .

Federal law, 18 U.S.C. § 3109 (1988), provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Under these statutes, two kinds of search warrants may be executed: "knock-and-announce" and "no-knock." In order to obtain a warrant which may be served without knocking, the magistrate must be provided with information to support the need for entry without announcement.

North Dakota has a similar statute governing the execution of a search warrant, and the North Dakota Supreme Court stated that the statute is a "codification of the common law rule that police may break into a home only after announcing their presence and purpose in seeking entry." *State v. Sakellson*, 379 N.W.2d 779, 781-82 (N.D. 1985). The court wrote:

> The primary policies underlying the knock-and-announce rule are the protection of privacy in the home and the prevention of violent confrontations. [Citations omitted.]
>
> . . . .
>
> . . . [A]n unannounced entry by officers increases the potential for violence by provoking defensive measures a surprised occupant would otherwise not have taken had he known that the officers possessed a warrant to search his

home.
*Sakellson, supra* at 782.

The court wrote that compliance with the knock-and-announce requirement does not hinder law enforcement, because a no-knock warrant may be issued under certain circumstances, and "even without a no-knock warrant, announcement prior to entry may be excused under certain exigent circumstances." *Sakellson, supra* at 783.

I agree with a Minnesota court which held that "[a]n officer's belief that exigent circumstances exist must be based on fact." *State v. Whelan*, 350 N.W.2d 414, 417 (Minn. App. 1984).

As the California Supreme Court has noted, noncompliance with the knock-and-announce rule may be excused

> when the officer acts on a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. Such a belief, however, must be based on the facts of the particular case. It cannot be justified by a general assumption that certain classes of persons subject to arrest are more likely than others to resist arrest, attempt to escape, or destroy evidence.

*People v. Rosales*, 68 Cal. 2d 299, 305, 437 P.2d 489, 493, 66 Cal. Rptr. 1, 5 (1968).

The *Sakellson* court adopted similar standards which may excuse officers from the usual notice requirements: "when (1) reasonably acting to prevent destruction or disposal of evidence; (2) when notice would 'increase the peril of the officers or others;' and (3) when notice would be a useless gesture." *Sakellson, supra* at 783 n.3.

In the present case, the warrant did not include an authorization for a no-knock entry. The affidavit in support of the warrant did not seek or provide any justification for a no-knock entry. Richard J. Heideman, a special agent for the FBI, wrote the affidavit, which sought authority to search the Military Avenue home for a gambling machine which was being brought to Omaha from California. Heideman stated that surveillance indicated that the machine was sighted in a pickup owned by Gary Apker and that Apker was observed meeting with another individual and unloading the device into the

building.

In *State v. Waits*, 185 Neb. 780, 786-87, 178 N.W.2d 774, 779 (1970), it is stated: " 'The search much [sic] be one directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed. It must not be a general exploratory search through which the officers merely hope to discover evidence of wrongdoing.' "

Craig Molek, a member of the ERU team, testified that he did not read the search warrant and that he was not sure if it was a no-knock warrant, but that that is the kind normally served by the team. Kurt Sorys, another ERU member, also stated that the team normally executes no-knock warrants. He testified that no one asked that the door be opened and that he did not hear anyone destroying evidence. Gary Hammer, a team leader, stated that the ERU team normally enters unannounced and that he did not hear anyone trying to flush or destroy evidence. Anthony Infantino, who was in charge of the ERU team, did not take part in the actual search, but testified that he did reconnaissance of the address to determine how to enter. Conahan testified that no one refused the team entry and that he did not check to see if the door was locked before ordering it kicked in.

Adopting the elements named in *Sakellson*, *Whelan*, and *Rosales*, I do not find that the Omaha ERU team met any of the requirements which may excuse officers from first announcing their presence. The evidence sought and named in the warrant, a gambling machine, could not be destroyed or disposed of easily. There was no evidence that notice would increase the peril to officers or others. Indeed, testimony was presented that the law enforcement officers' surveillance had indicated that only one person was expected to be in the clubhouse at the time of the execution of the warrant. The mere fact that the home was asserted to be a Hell's Angels clubhouse does not indicate that any weapons would be present. Evidence was presented that no prior disturbances had been reported at the house in the past $4^1/_2$ years. Neither is there evidence that the notice would have been a useless gesture. If only one person was expected to be at the house, the numerous officers sent to execute the

warrant should have been able to serve it after announcing their presence.

The State argues that the officers had a reasonable belief that exigent circumstances existed. In *State v. Watkinson*, _____ Wis. 2d _____, 468 N.W.2d 763 (1991), citing *State v. Cleveland*, 118 Wis. 2d 615, 348 N.W.2d 512 (1984), the Wisconsin court held that announcement prior to entry is not required where there is a reasonable belief that the announcement would endanger the safety of the police or others or where there is a reasonable belief that unannounced entry is required to prevent the destruction of evidence. Wisconsin does not have a state statute similar to Nebraska's regulating the execution of search warrants, but the officers in *Cleveland* argued that they needed to serve the warrant as a no-knock warrant because they were seeking drugs, and "drug dealers are often armed." *Cleveland, supra* at 631 n.16, 348 N.W.2d at 521 n.16. The Wisconsin court rejected that argument, and I agree in this case, in which a member of the ERU team testified that it is common knowledge that persons at the Hell's Angels clubhouse normally are armed. The Wisconsin court wrote:

> The fact that a person is a member of a class of persons more likely to resist search is not sufficient to justify unannounced entry. The officer must have knowledge of specific facts that indicate that this particular person will conduct himself or herself in this manner when confronted by police.

*Id.*

I agree with the trial court in finding that the officers here violated both state and federal law. The search warrant was issued to look for a gambling machine, and there is nothing in the record to indicate that the occupants of the home could have disposed of the machine if the officers had first knocked at the front door and announced their intention to execute the warrant. It is true that exigent circumstances may apply where it is believed that narcotics may be inside a residence and the narcotics could be disposed of prior to entry after announcing the warrant. That does not apply to a gambling machine which was described as being about 5 feet high and 2 feet wide. As the affidavit indicated, it required two individuals to move the

machine when it was unloaded from a pickup truck and taken into the house. Unlike narcotics, which can easily be disposed of by flushing down a toilet, this gambling machine could not have been removed from the residence after the officers announced their presence and prior to their entry.

Nor is there evidence that the officers were in danger in attempting to retrieve the machine. None of the occupants were attempting to flee the residence. Conahan stated that he heard people talking, but that does not mean that these people were dangerous or that they would not have opened the door if requested to do so. The evidence is clear that the ERU did not request entry. A tactical decision was made to attempt entry from the rear, but no explanation has been provided for the decision not to attempt entry from the front, which was not fenced or guarded by dogs. When Conahan notified the residents of the ERU's presence, he did not say, "Omaha Police, search warrant, open up," but instead ordered "everybody down." Within seconds, the door was kicked down.

The Nebraska Supreme Court has not previously ruled on any case differentiating between knock-and-announce and no-knock warrants. However, in *State v. Holman*, 229 Neb. 57, 424 N.W.2d 627 (1988), the court held that a warrant which was issued for service in the daytime but which was served at 8 p.m. was not properly served. The case at bar is analogous—the knock-and-announce warrant was served as a no-knock warrant. In *Holman*, the court held that the improper service of the warrant required that the seized evidence should have been suppressed. The same rule applies to the evidence here.

Nothing in the record indicates that the ERU encountered any exigent circumstances, other than those of their own creation, which would have allowed them to serve a knock-and-announce warrant as a no-knock warrant. Nor am I persuaded that they had a good faith belief that they would be in danger in serving the warrant, since none of the ERU members ever saw the warrant. The remedy for the illegal seizure of evidence is that such evidence must be suppressed, and the trial court was correct in granting the defendant's motion.

AFFIRMED.