**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Fred A. FRIEND, Defendant–Appellant.**

No. 94–2263.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1994.

Decided March 15, 1995.

Rehearing and Suggestion for Rehearing
En Banc April 25, 1995.

William Bracker, Council Bluffs, IA, argued, for appellant.

Daniel A. Morris, Asst. U.S. Atty., Omaha, NE, argued, for appellee.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Fred A. Friend appeals his conviction on eight counts of drug trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of using a firearm equipped with a silencer during and in relation to a drug trafficking conspiracy in violation of 18 U.S.C. § 924(c). We conclude that the district court properly denied Friend's motion

to suppress evidence seized during a search of his automobile. However, we agree with Friend that there was insufficient evidence that another conspirator's secret use of a firearm *equipped with a silencer* was, for Friend, a reasonably foreseeable consequence of the conspiracy. Accordingly, we reverse the firearm conviction and remand.

## I. The Suppression Issue.

On October 17, 1990, police executed federal search warrants at numerous locations in and around Omaha, Nebraska, the result of a lengthy investigation of methamphetamine trafficking by Gary Apker and other members of the local Hell's Angels Motorcycle Club. This investigation is more fully described in *United States v. Lucht*, 18 F.3d 541 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994), which affirmed the convictions of Apker and other conspirators.

The searches included the Hell's Angels clubhouse at 1906 Military Avenue in Omaha. Friend, a club member who lived next door, was in the clubhouse during this search, and police found 3.5 grams of methamphetamine on Friend's person. As the search continued, Officer Tim Shannon had his drug detection dog sniff the clubhouse, the garage at the rear of the clubhouse property, and several cars parked in the alley behind the clubhouse.

One of these cars belonged to Friend. It was parked next door to the clubhouse, between the alley and the garage for Friend's residence at 1916 Military Avenue. This property had a security fence surrounding its back yard. Locked gates barred entry to the fenced-in yard, where another vehicle was parked. However, Friend's car was parked outside the fenced area, between the garage and the public alley, backed up to the end of the fence.

Officer Shannon led his dog around Friend's car. On the driver's side, between the car and the garage, the dog alerted to the seam of the car door, indicating the presence of drugs in the rear seat or the trunk. Police then impounded the car. They obtained a search warrant based upon the dog's alert and discovered approximately one pound of methamphetamine in the trunk, packaged in the same manner as drugs found at Apker's house.

Friend was initially charged with violating Nebraska drug laws, but the state trial court suppressed the evidence found in the trunk of Friend's car. The Nebraska Supreme Court affirmed, concluding that the search was not authorized by the warrant to search the clubhouse; that Friend had a reasonable expectation of privacy in his parked, locked vehicle; and that the dog sniff was thus an unreasonable search prohibited by the Fourth Amendment. *State v. Friend*, No. 91–362 (Neb. July 25, 1991). The state charges were then dismissed, and federal authorities commenced this prosecution.

Following an evidentiary hearing, the district court denied Friend's motion to suppress the evidence seized from the trunk of his car. Disagreeing with the Nebraska Supreme Court, the district court concluded that Friend had no reasonable expectation of privacy in the area where his car was parked, and therefore the dog sniff was not a Fourth Amendment search:

> The area [where the car was parked] is outside the garage and adjoins a public alley in such a manner as it is impossible to ascertain where the property line ends and the public area begins. The small concrete slab outside the garage is the only portion of the area in question that might conceivably be considered private, yet the slab was not even large enough to allow for parking a vehicle entirely on the slab. The alley area provides parking for the residents of 1906 and 1916 Military Avenue as well as all other neighboring residences and an apartment building. The garbage can of 1916 Military Avenue is located just inside the fence near where the vehicle in question was parked, and garbage cans of other residences are in the area, indicating the availability of the area to garbage collectors. Also, the area is available to delivery vehicles approaching the apartment building as well as neighboring residences. The area is completely open to public access and public view, and no signs or barriers are posted to the contrary. In fact, the fence gate leading

from the yard of 1906 Military Avenue into the alley area demands that whoever leaves from that gate enter into the alley and walk by the area behind 1916 Military Avenue where the vehicle in question was parked.

On appeal, Friend argues that the search of the clubhouse and his person were illegal; that the police had no other basis for entering his property and searching his locked car, by dog sniff or otherwise; and therefore that the warrantless search violated his Fourth Amendment rights.

### A.

At the outset, we note an aspect of this issue not discussed by the parties or the district court. The October 17, 1990, searches were the product of joint federal-state law enforcement. Friend was then prosecuted in state court. Only when suppression of key evidence was affirmed by the Nebraska Supreme Court did federal authorities commence this prosecution, seeking to rely upon the very same evidence.

■ The district court undertook its own de novo determination of Friend's suppression motion, essentially ignoring the Nebraska Supreme Court's prior decision. It appears settled that this was correct, because the Fourth Amendment issue "is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." *Elkins v. United States,* 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *see also United States v. Singer,* 687 F.2d 1135, 1144 n. 16 (8th Cir.1982); *United States v. Wedelstedt,* 589 F.2d 339, 347 (8th Cir.1978), *cert. denied,* 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). While we have misgivings about the result that rule produces in this case, where federal and state authorities jointly obtained the evidence, and the State took the suppression issue to its highest court, we are bound by Supreme Court and Eighth Circuit precedent that the state court's Fourth Amendment determination is not binding on the United States in a subsequent federal prosecution.

### B.

■ Turning to the merits of the Fourth Amendment issue, we agree with the district court that the dog sniff of Friend's car was not a Fourth Amendment search. In *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983), the Supreme Court commented:

> [T]he canine sniff is *sui generis.* We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here— exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

Though it was technically dictum in *Place,* we quoted this passage in *United States v. Harvey,* 961 F.2d 1361, 1363 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992), and concluded that a dog sniff of luggage on a public bus is not a Fourth Amendment search.

■ *Place* and *Harvey* control the question presented in this case. Like a piece of luggage in a public place, "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). To be sure, the Fourth Amendment protects against unreasonable searches of automobiles—for example, absent probable cause police may not break into and search a car that is parked and locked on a public street or alley. But a dog sniff of a car parked on a public street or alley, like a dog sniff of unopened personal luggage on a public bus, is so limited an intrusion on protected privacy interests as to not amount to a search for Fourth Amendment purposes.

■ In this case, Friend's car was parked, not on the street, but on his property, outside a locked gate and fence, between the garage and a public alley. Friend argues that his Fourth Amendment rights were violated

when Officer Shannon led the dog onto this property to conduct a drug detection sniff. We disagree. Fourth Amendment protection is strongest for a person's home and the area around a home, known as the curtilage. By contrast, the Fourth Amendment does not protect an open field, *see Oliver v. United States,* 466 U.S. 170, 178, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984), and it does not protect illegal activity or contraband in a barn that can be observed from an open field. *See United States v. Dunn,* 480 U.S. 294, 303–05, 107 S.Ct. 1134, 1140–42, 94 L.Ed.2d 326 (1987).

■ We agree with the district court that all of the curtilage factors identified in *Dunn,* 480 U.S. at 301, 107 S.Ct. at 1139,[1] support that court's finding that Friend's car was not parked within the curtilage of his residence. This finding is not clearly erroneous. *See United States v. Swepston,* 987 F.2d 1510, 1513 (10th Cir.1993) ("[W]hat comprises curtilage is a question of fact."). Given the car's location, the situation was no different for Fourth Amendment purposes than if it had been parked on the street. At that location, Friend's legitimate expectation of privacy regarding his parked car did not extend to the uniquely limited intrusiveness of a dog sniff. *Cf. United States v. Ventling,* 678 F.2d 63, 65–66 (8th Cir.1982) (no reasonable expectation of privacy in tire tracks in a driveway, despite "No Trespassing" signs). Thus, the district court correctly held that the dog sniff outside the door of Friend's car was not a search.

### C.

■ When the dog alerted for drugs in Friend's car, the police had probable cause to impound the vehicle and to obtain a warrant to search it. *See United States v. Graham,* 982 F.2d 273, 274 (8th Cir.1992). Friend argues that the warrant was defective because the warrant application did not disclose that the car was parked on private property.

However, that did not affect whether the dog's alert provided probable cause to issue the warrant.

■ Moreover, "[o]nce probable cause is established, a car can be searched without a warrant under the automobile exception to the warrant requirement." *United States v. Bloomfield,* 40 F.3d 910, 919 (8th Cir.1994) (en banc); *see also United States v. Martel–Martines,* 988 F.2d 855, 858–59 (8th Cir. 1993). In this case, after impounding Friend's car, the police commendably followed "better practice" and obtained a warrant before searching the locked car, as we suggested in *United States v. Perry,* 925 F.2d 1077, 1081 (8th Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The resulting search was valid, and the district court properly denied Friend's motion to suppress.

## II. The Firearm Violation.

On the day police arrested Friend and impounded his car, they also searched the home of the suspected ringleader, Gary Apker. They found some ten pounds of methamphetamine, $225,000 in cash, and a firearm equipped with a silencer. The firearm and homemade silencer were found in a large compartment beneath the cement floor under a bathroom vanity in the basement level garage, wrapped in a cloth bag and surrounded by most of the money and drugs. Count IX of the indictment charged Friend with violating 18 U.S.C. § 924(c)(1) by using this firearm during and in relation to the methamphetamine distribution conspiracy. The jury found him guilty of this charge, which increased his prison sentence by thirty years.[2] We reverse this conviction.

■ A conspirator is criminally liable for a substantive offense committed by another conspirator within the scope and in furtherance of the conspiracy unless that offense "was merely a part of the ramifications

1. "[T]he proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by."

2. 18 U.S.C. § 924(c)(1) mandates a consecutive sixty-month prison sentence if a firearm is used or carried during or in relation to a drug trafficking crime. This mandatory sentence is increased to 360 months "if the firearm ... is equipped with a firearm silencer or firearm muffler."

of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184–85, 90 L.Ed. 1489 (1946). Firearms are frequently employed to further drug trafficking conspiracies, and we have applied this *"Pinkerton* doctrine" in affirming § 924(c) convictions of conspirators who, like Friend, did not actually use or carry the weapon. *See United States v. Lucas,* 932 F.2d 1210, 1219–20 (8th Cir.), *cert. denied,* 502 U.S. 929, 112 S.Ct. 349, 116 L.Ed.2d 288 (1991), 502 U.S. 1100, 112 S.Ct. 1186, 117 L.Ed.2d 429 (1992); *United States v. Golter,* 880 F.2d 91, 93 (8th Cir.1989).

▆▆▆ The government must meet two distinct burdens in proving Friend guilty of such a *Pinkerton* charge. First, it must prove that another conspirator, here presumably Apker, violated § 924(c) by using or carrying a firearm equipped with a silencer during and in relation to their drug trafficking conspiracy. Viewing the trial evidence in the light most favorable to the government, as we must, the government clearly met that burden. We have repeatedly recognized "that drug traffickers typically keep firearms available to protect themselves and their drugs and drug money." *United States v. Jones,* 990 F.2d 1047, 1049 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994). In this case, the jury could find that Apker used a silencer-equipped firearm to further the conspiracy when he secreted that weapon in the midst of his stash of methamphetamine and cash. *Compare United States v. Duke,* 940 F.2d 1113, 1119 (8th Cir.1991); *United States v. Lyman,* 892 F.2d 751, 752–53 (8th Cir.1989), *cert. denied,* 498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990).

▆▆▆ Second, the government must prove that Apker's possession of a silencer-equipped firearm could have been reasonably foreseen by Friend, as a natural or necessary consequence of their conspiracy.[3] The government argues broadly that drug trafficking is a violent business and therefore it is reasonably foreseeable to all members of a methamphetamine distribution conspiracy that guns would be used to protect the conspirators, the drugs, and drug proceeds. But "there is no presumption of foreseeability." *United States v. Castaneda,* 9 F.3d 761, 767 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1564, 128 L.Ed.2d 210 (1994). The government must prove criminal conduct beyond a reasonable doubt. In this context, that means proof that Friend's knowledge of and role in the conspiracy was such that he could reasonably have foreseen Apker's use of the firearm. Our prior cases dealing with this issue have all required this type of defendant-specific proof. *See United States v. Martinez,* 958 F.2d 217, 219 (8th Cir.1992); *Golter,* 880 F.2d at 94.[4] Thus, we must turn to the government's proof at trial on this issue.

The core of the government's physical evidence at trial was the one pound of methamphetamine found in the trunk of Friend's car. This contraband was cut and wrapped like methamphetamine found in Apker's home. It was found resting in a helmet with a "Cleveland" decal or logo that other evidence linked to Apker. By itself, this evidence only proved that Friend had acquired a substantial quantity of methamphetamine from Apker, strong evidence that Friend was at least a peripheral member of Apker's distribution conspiracy, but perhaps not enough to prove that customer Friend could reasonably foresee that supplier Apker had a firearm hidden with his stash of drugs and drug proceeds.

---

**3.** We reject Friend's contention that the district court erred in refusing to substitute "was reasonably foreseen" for "could have been reasonably foreseen" in its instruction defining the elements of the Count IX offense. We approved the term used by the district court as "fully comply[ing] with *Pinkerton's* requirements" in *Lucas,* 932 F.2d at 1220.

**4.** Other circuits appear to have adopted a similar standard. In addition to the Ninth Circuit's de-

cision in *Castaneda,* 9 F.3d at 766–67, *see United States v. Christian,* 942 F.2d 363, 367–68 (6th Cir.1991), *cert. denied,* 502 U.S. 1045, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992); *United States v. Cummings,* 937 F.2d 941, 945 (4th Cir.), *cert. denied,* 502 U.S. 948, 112 S.Ct. 395, 116 L.Ed.2d 345 (1991); *United States v. Diaz,* 864 F.2d 544, 549 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989).

■ But the government's evidence did not end there. It also included a tape of a lengthy conversation between Apker and Friend at Apker's house, a conversation which ended at 3:55 a.m. on October 17, 1990, just hours before the search of that house. Viewed most favorably to the government, the tape revealed a wide-ranging discussion by Friend and Apker of their long-standing methamphetamine manufacture and distribution activities. They talked about many people who had engaged in these activities with them, and the difficulties each was having collecting for the illegal drugs he had sold. This conversation clearly put Friend well inside the periphery of the conspiracy, in a position to know the violent nature of the business and therefore the likelihood that a major supplier like Apker would have a stash of drugs and proceeds protected by a firearm.

However, while this analysis justifies convicting conspirator Friend for Apker's use of a firearm, it does not answer the separate question of the silencer. The government argues that, if use of a firearm is reasonably foreseeable, the conspirator is liable for whatever weapon was in fact used. On the facts of this case, we disagree. After instructing the jury on Count IX, the district court also charged on the lesser included offense of using a firearm with no silencer. The government did not object, thereby acknowledging that a separate element of Count IX is that a firearm *equipped with a silencer* was used during and in relation to the drug conspiracy. Therefore, under *Pinkerton*, the government must prove beyond a reasonable doubt that Friend reasonably could have foreseen Apker's use of that silencer-equipped firearm.

There was no proof whatsoever on this issue. Apker had bragged in an intercepted conversation with another conspirator that, "No one in the United States knows about this safe," where the firearm was hidden. The police officers who discovered the well-hidden firearm testified that they were surprised to find it equipped with a silencer. There was simply no evidence that Friend had actual knowledge of any firearm in Ap-

ker's house, much less a firearm equipped with a silencer.

Nor did the government present any evidence describing how a silencer-equipped firearm might generally be used to further a drug distribution conspiracy. The police officer who testified that "[o]ver 80 percent of the investigations involving narcotics reveal some type of weapons" gave no testimony concerning the prevalence or use of silencers. And the prosecutor in closing argument admitted that "[a] gun with a silencer, however, is unusual." We conclude that there was a total absence of proof that Apker's silencer could have been reasonably foreseen by Friend. Therefore, Friend's conviction on Count IX and the twenty-five year sentence enhancement he received for this unproved crime must be reversed.

## III.

The judgment of the district court convicting Fred A. Friend of Count IX of the indictment is reversed. However, the evidence was sufficient to convict Friend of the lesser included offense of using a firearm without a silencer during and in relation to a drug trafficking conspiracy. The jury in convicting Friend of the greater offense necessarily found that he committed this lesser included offense. Accordingly, we remand with directions that the district court enter an amended judgment convicting Friend of this lesser included § 924(c) offense and modifying his sentence as may be appropriate. *See United States v. Cavanaugh*, 948 F.2d 405, 409 (8th Cir.1991). In all other respects, the judgment of the district court is affirmed.