**UNITED STATES of America,**
**Plaintiff,**

v.

**Gary D. APKER, Defendant.**

**No. 8:90CR127–1.**

United States District Court,
D. Nebraska.

Nov. 5, 2002.

Laurie M. Barrett, Assistant United States Attorney, Michael G. Heavican, United States Attorney, Stephen L. Von Riesen, Assistant United States Attorney, Omaha, NE, for Plaintiff.

Martin J. Kushner, Kushner Law Office, David R. Stickman Federal Public Defender's Office, Omaha, NE, for Defendant.

## MEMORANDUM OPINION AND ORDER

BATAILLON, District Judge.

This matter is before the court for findings on remand from the Eighth Circuit Court of Appeals, Filing No. 1744. *See United States v. Apker*, 241 F.3d 1060, 1063 (8th Cir.2001). The Eighth Circuit Court of Appeals reversed the earlier judgment of the district court and remanded the action for further proceedings. *Id.* This court was directed to conduct an evidentiary hearing and to determine whether Apker's dismissed drug trafficking charges[1] were more serious than the 18 U.S.C. § 924(c) charge, based on a comparison of the actual penalties that would have been assessed. *Id.* The Court of Appeals noted that this court would find it necessary to address several potential sentencing issues, including, but not limited to, whether or not the $230,346 in cash found in Apker's safe should be converted to a drug quantity for sentencing purposes, whether or not an adjustment for Apker's role in the conspiracy offense should be assessed, whether or not Apker has the requisite prior drug felony convictions to trigger a mandatory life sentence (or perhaps the career offender guideline), and whether or not Apker could qualify for an acceptance of responsibility adjustment, among others. *Id.* at 1063 n. 3. An evidentiary hearing was held on August 1, 2001.

## I. BACKGROUND

Based on the evidence adduced at the hearing and other relevant information, the court finds as follows. Gary Apker and other members of the Hell's Angels Motorcycle Club of Omaha were indicted in a 33–count superseding indictment as part of a large drug trafficking conspiracy that operated from March 1988 to October 1990. Evidentiary Hearing Exhibit (hereinafter, "Hrg.Ex.") 17 at 57 (indictment). The indictment was the result of an investigation by law enforcement officers that included surveillance, pen registers, confidential informants, wiretaps, and eventually the planting of "bugs" in Apker's house. Evidentiary Hearing Transcript (hereinafter, "Hrg.Trans.") at 24–30.

Search warrants were executed simultaneously at the homes of all the defendants on Oct. 17, 1990. *See United States v. Lucht*, 18 F.3d 541, 548 (8th Cir.1994). The record establishes that "through electronic surveillance of Apker's house, officers knew that Apker had completed a drug transaction within hours of the search; he had a hiding place for his drugs which he considered undetectable; and he liked the elevated location of his home because he could survey his surroundings." *Id.* Further, the record shows that "weapons had been found in Apker's home on two previous searches; he had a prior conviction for being a felon in possession of a firearm and a prior arrest for assault with a firearm; and he had a motion detector outside of his house." *Id.*

During the search of Apker's house, a Ruger .22 caliber semiautomatic pistol with a silencer, approximately ten pounds (4536 grams) of methamphetamine, twenty pounds of a cutting agent, and approximately $232,000 in cash were seized from a

---

1. In the indictment, Apker was charged with a violation of 21 U.S.C. § 846 (conspiracy to distribute methamphetamine) (Count I); a violation of 21 U.S.C. § 848(a) (engaging in a continuing criminal enterprise) (Count II); violations of 21 U.S.C. § 841(a)(1) (manufacture, distribution, or possession with intent to distribute a controlled substance) (Counts III to XXIII); a violation of 18 U.S.C. § 1952(a)(3) and § 2 (travel in interstate commerce in furtherance of unlawful activity and aiding and abetting) (Count XXX); a violation of 18 U.S.C. § 1956(a)(1) (money laundering and aiding and abetting) (Counts XXXI and XXXII); and 18 U.S.C. § 924(c) (using or carrying a firearm in connection with a drug offense).

hidden safe in the basement of the residence. Hrg. Trans. at 28; 83. "The firearm and homemade silencer were found in a large compartment beneath the cement floor under a bathroom vanity in the basement level garage, wrapped in a cloth bag and surrounded by most of the money and drugs." *United States v. Friend,* 50 F.3d 548, 552 (8th Cir.1995), *vacated and remanded* 517 U.S. 1152, 116 S.Ct. 1538, 134 L.Ed.2d 643 (1996) (*Bailey* issue) ("*Friend I*").

In addition, the search of co-conspirator Egan's home revealed sixty grams of methamphetamine, a cutting agent, a scale, and a loaded handgun. *Lucht,* 18 F.3d at 552. Another pound of methamphetamine (436.5 grams) was found in the trunk of co-conspirator Fred Friend's car. *Friend,* 50 F.3d at 550; Hrg. Ex. 14. Police also found 3.5 grams of methamphetamine on Friend's person. *Friend,* 50 F.3d at 550.

Evidence of intercepted conversations shows that Apker had a "drug distribution business." *Id.* The evidence in Apker's co-conspirators' trials revealed "one conspiracy, centered around Apker as its supplier, with one criminal objective: to distribute methamphetamine in the Omaha area." *Id.* at 552. Moreover, there is evidence of a "wide-ranging discussion by Friend and Apker of their long-standing methamphetamine manufacture and distribution activities." *Friend I,* 50 F.3d at 553. It has also been established "[f]rom listening to the intercepted conversations between Egan and Apker, [a] jury could have rationally determined that Apker fronted drugs to Egan for distribution and that Egan advised Apker about laundering money." *Lucht,* 18 F.3d at 552. Apker has been variously referred to in connection with the conspiracy as a "major supplier," *Friend I,* 50 F.3d at 553, and "lead conspirator," *United States v. Friend,* 101 F.3d 557, 558 (8th Cir.1996) ("*Friend II*"). Evidence also shows that Apker directed

the activities of others. Hrg. Exs. C003, C024, C028, C015 (transcripts of recorded conversations). It is not disputed that the conspiracy involved more than five people. Hrg. Trans. at 133.

The sum of $232,000 in cash was found at Apker's home in the safe with the methamphetamine. Hrg. Trans. at 28. Apker had no job at the time and his earnings were minimal. Hrg. Trans. at 103, 15; Hrg. Exs. 3, 4, 5, 6, 7, 8, and 9 (tax returns). The seized currency was forfeited to the government. Hrg. Ex. 15 (Order of Forfeiture). Motorcycles valued at approximately $30,000 were also forfeited to the government. Hrg. Ex. 22, ¶ 14 (Supplemental Presentence Investigation Report, hereinafter, "PSR"). The evidence shows that the seized money was derived from drug sales. Hrg. Trans. at 30–40, Hrg. Exs. C015, C028 (transcripts of recorded conversations).

Intercepted conversations showed that Apker had sold a pound of methamphetamine to co-conspirator Fred Friend for $6,250 just before the search of Apker's residence. Hrg. Trans. at 48, 57; Hrg. Exs. 13 and C028. A pound of methamphetamine was seized from the trunk of Fred Friend's car shortly thereafter. Hrg. Trans. at 48; Hrg. Ex. 14; *Friend I,* 50 F.3d at 550. Evidence indicates that the Fred Friend transaction was a wholesale sale. Hrg. Trans. at 48. A handwritten note hidden with and seized along with the methamphetamine also supports a wholesale price of $6,250 for the methamphetamine. Hrg. Ex. 13. Agent Richard Heideman of the FBI testified that the $232,000 equates to approximately seventeen kilograms of methamphetamine, based on a value of $6,250 per pound at the wholesale level. Hrg. Trans. at 59–62; Hrg. Ex. 21.

The evidence also shows that Apker sold drugs at the retail level as well as the wholesale level. Hrg. Trans. at 61. In the

supplemental PSR, the probation officer determined that the seized money would equate to twenty-nine and one-half kilograms of methamphetamine, apportioning 75% to wholesale and 25% to retail.[2]  See Hrg. Ex. 22, ¶¶ 15 and 16.  Agent Heideman testified that the retail price of the methamphetamine in 1990 was approximately $1,000 per ounce or $12,000 per pound.  Hrg. Trans. at 59.  Evidence of intercepted conversations sets the retail value at $20,000 per pound.  *Id.* at 58–59; Hrg. Ex. 22, ¶ 12.

The evidence also shows that Apker had several felony drug convictions at the time he was indicted in this case.[3]  Hrg. Trans. at 13, Hrg. Exs. 1 and 2. Apker has also been implicated in several other prosecutions.  *See State v. Farrell*, 242 Neb. 877, 497 N.W.2d 17, 18 (1993) (referring to Apker as "prime suspect as a distributor of methamphetamine in the Omaha area"); *State v. Pierson*, 238 Neb. 872, 472 N.W.2d 898, 901 (1991) (citing testimony linking Apker to gambling devices); *State v. Mathews*, 205 Neb. 709, 289 N.W.2d 542, 544 (1980) (citing testimony that Apker stored guns and drugs at defendant's house).  Apker also has a history of other criminal conduct.  Hrg. Ex. 17 at 189–90 (Presentence Investigation Report dated April 30, 1992) ("Original PSR") (outlining Apker's criminal conduct).[4]

In addition, the government has shown that, pursuant to 21 U.S.C. § 851(a),[5] it filed informations seeking an enhanced

---

**2.** The Supplemental PSR calculates the Apker's offense level and guideline range of the dismissed drug charges (grouped) as follows:

| | |
|---|---|
| Base Offense Level: | |
| U.S.S.G. | |
| § 2D1.1(a)(3)(c)(4) | |
| (29.6 kg meth) | 36 |
| Adjustment for: possess. of firearm during offense 2D1.1(b)(1) | + 2 |
| Adjustment for: role as "leader" of 5 or more § 3B1.1(a) | + 4 |
| Adjusted Offense Level: | 42 |
| NO Adjustment for Acceptance of Responsibility | — |
| Total Offense Level: | 42 |
| Criminal History Category: | III |
| Sentencing Guideline Range: (ZONE D) | 360 Months to Life |

**3.** On November 14, 1978, Apker was convicted, after a jury trial, of "the felony offense of unlawful possession of a controlled substance with intent to deliver."  *State v. Apker*, 204 Neb. 577, 284 N.W.2d 14 (1979); Hrg. Ex. 1. Apker was sentenced to two years' probation with thirty days' incarceration for that offense.  Hrg. Ex. 1. He commenced his sentence on October 23, 1979, and was released from probation on December 4, 1981, after having served unsatisfactorily.  *Id.* While on probation for the 1978 conviction, Apker was arrested and later charged in both state and federal court with a drug offenses involving LSD and methamphetamine.  *See* Hrg. Ex. 2. In state court, he pled guilty to possession of LSD and was convicted and sentenced to twenty to thirty-six months incarceration on October 7, 1983.  *Id.* In federal court, he was convicted of possession of methamphetamine and of being a felon in possession of a firearm.  Hrg. Ex. 22, ¶ 34; *see United States v. Apker*, 705 F.2d 293 (8th Cir.), *aff'd, United States v. Fitzgerald*, 724 F.2d 633 (8th Cir. 1983) (en banc).  He was sentenced to three years' imprisonment.  Hrg. Ex. 22, ¶ 34.

**4.** This conduct includes several dismissed prosecutions: one for possession of a controlled substance (100 tablets of white-cross methamphetamine); one for burglary in which Apker was found in possession of a .38 caliber revolver, fifteen rounds of ammunition and two speed loaders; one for attempted assault in an incident that involved running his car into someone's vehicle; and one for receiving stolen property and altering a serial number after a 9mm semi-automatic firearm and a Harley Davidson motorcycle with an altered vehicle identification number were found in his house.  Hrg. Ex. 17 at 189–90.

**5.** That statute provides that "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions" unless the United States Attorney files an information with the court, either before trial or

penalty by reason of a prior conviction against those co-conspirators, Dale Ray Haley and Roger A. Wright, who did not enter pleas of guilty to the drug or weapons charges. Hrg. Ex. 16, Vol. OO at 7271 and 7306; *United States v. Apker*, 8:90CR127, Filing Nos. 1038 and 1039 (D.Neb. March 19, 1992). The government asserts that it would have filed such an information against Apker had he not entered a plea of guilty to the weapons charge. Hrg. Trans. at 14–15.

## II. DISCUSSION

### A. Drug Quantity

The Eighth Circuit has directed this court to make findings in the realm of the hypothetical. The court is to determine what Apker's actual sentence would have been under the United States Sentencing Commission, *Guidelines Manual* (Nov. 1989) ("Guidelines") if he had been convicted of the drug trafficking offenses. Under the Guidelines, the most serious offense is the one with the higher offense level. *United States v. Halter*, 217 F.3d 551, 554 (8th Cir.2000).

Under the Guidelines, the base offense level is determined with reference to a drug quantity determination. *See* U.S.S.G. § 2D1.1. The quantity of drugs properly attributable to Apker for sentencing purposes would be the amount that is reasonably foreseeable to Apker within the scope of the criminal activity jointly undertaken by Apker and his co-conspirators. *Pruitt v. United States*, 233 F.3d 570, 572 (8th Cir.2000). The government can properly prove the quantity for the conspiracy by summing the amounts derived from the testimony of witnesses and corroborating evidence and by extrapolating from the

dollar amounts of drug proceeds and other financial information the quantity involved. *Id.* Apker's role as the ringleader would be consistent with his being sentenced for the full amount of the conspiracy-related methamphetamine reasonably foreseeable to him. *Id.*

■ In addition, "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.4, comment. (n.2); *United States v. Brown*, 19 F.3d 1246, 1248 (8th Cir.1994). Although the government bears the burden of establishing quantity, the court can rely upon an estimate of drug quantity that has sufficient accuracy in approximating the amount. *See United States v. Milton*, 153 F.3d 891, 898 (8th Cir.1998). In making this determination, a judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved. U.S.S.G. § 2D1.4, comment. (n.2).

■ The court finds that the evidence shows that Apker would have been held responsible for trafficking in a drug quantity between ten and thirty kilograms of methamphetamine after converting the value of the seized cash to a drug quantity under either the scenario presented by FBI Agent Heideman or that presented by the probation officer. Because either proposal would result in a quantity between ten and thirty kilograms, the court need not determine which of the two approaches would have been followed. Let it suffice to state that both provide sufficiently accurate estimates.[6]

before entry of a plea of guilty, that states in writing the previous convictions to be relied upon. 21 U.S.C. § 851(a)(1) (1989).

6. Apker, on the other hand, suggests that the cash value should not be converted and pro-

poses that the offense level and guideline range of the dismissed drug charges be calculated as follows, basing drug quantity on the amount of methamphetamine seized:

■ The court rejects Apker's contention that the cash would not have been converted to a drug quantity. Apker has propounded no alternative source of the money and the evidence supports, if not compels, the inference that the cash was derived from drug sales. Apker's forfeiture of the funds, though not determinative, is a factor to consider since it stands to reason that one with an arguable basis to challenge the forfeiture of such a large sum would do so. Moreover, the fact that co-conspirators were not held responsible for a drug quantity based upon the money is of no consequence. When several defendants are convicted of conspiracy, the relevant conduct for purposes of sentencing "is not necessarily the same for every participant." U.S.S.G. §§ 1B1.3 comment. (n.1); 2D1.4 comment. (n.1). The money was found hidden in a safe in Apker's home, not in the homes of co-conspirators. There was a clear nexus, through physical presence and through recorded conversations, between the drugs and the money. Because there is evidence that Apker was the lead conspirator, it would be appropriate to attribute the value of the drug proceeds to him and not to others. Accordingly, the court finds a quantity-driven base offense level of 36 would be warranted if Apker had been convicted of the drug offenses.[7]

## B. Career Offender

The Anti–Drug Abuse Act of 1988, effective November 18, 1988, would have been applicable to Apker's sentence. *See* 21 U.S.C. § 841 (1989). The act made the mandatory minimum penalties previously applicable only to substantive distribution and importation or exportation offenses also applicable to conspiracies to commit these substantive offenses. *See* Pub.L. 100–690, § 6470(a), 102 Stat. 4377 (1988). The act also added methamphetamine to the mandatory minimum sentencing scheme. *Id.,* § 6470(g)(3). Under the amended statute, a person convicted of a drug trafficking offense involving 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine was subject to a mandatory minimum sentence of 20 years, with a maximum sentence of life, if the offense was committed after a felony conviction for a drug offense became final. 21 U.S.C. § 841(b)(1)(B)(viii) (1989) ("the enhanced penalty statute"). The Sentencing Commission is to "assure" that for adult offenders who commit their third felony drug offense or crime of violence, the Guidelines

Base Offense Level:
U.S.S.G.
§ 2D1.1(a)(3)(c)(4) (3–10
kg meth)                            34
Adjustment for: role as mgr
or supervisor; not leader
3B1.1(b)                           + 3
Adjusted Offense Level:             37
Adjustment for Acceptance
of Responsibility                  − 2
Total Offense Level:                35
Criminal History Category:         III
Sentencing Guideline
Range: (ZONE D)             210–262 months

7. Alternatively, the court notes that the evidence supports a finding that Apker should be held responsible for between one kilogram and three kilograms of *pure* methamphetamine which would also result in a base offense level of 36 under U.S.S.G. § 2D1.1(c)(4). Agent Heideman testified that the ten pounds of methamphetamine found in the safe was 50% pure. Hrg. Trans. at 58, 92. Five pounds of pure methamphetamine equals 2.268 kilograms of pure methamphetamine. *See* U.S.S.G. § 2D1.1(c), comment. (measurement conversion table). This approach would not include the conversion of any cash to drugs for computation of drug quantity. The district court is to use the offense level determined by the entire weight of the mixture of substance, or the offense level determined by the actual weight of the pure methamphetamine, whichever is greater. *United States v. Byler,* 98 F.3d 391, 394 (8th Cir.1996). Accordingly, even without inclusion of the value of the seized cash, Apker would have had a base offense level of at least 36 for the drug offenses.

prescribe a sentence of imprisonment "at or near the maximum term authorized" in the enhanced penalty statute. 28 U.S.C. § 994(h); *United States v. LaBonte,* 520 U.S. 751, 757, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). The phrase "maximum term authorized" should be construed as requiring the "highest" or "greatest" sentence allowed by statute. *Id.* As a consequence, the "maximum term authorized" for a repeat offender convicted under § 841(b)(1)(B) would be life—the enhanced statutory maximum—not the unenhanced maximum.[8] *See id.* at 759, 117 S.Ct. 1673.

■ Because Apker had at least one prior conviction for a felony drug offense, he was subject to application of the enhanced penalty. 21 U.S.C. § 841(b)(1)(B). The government has shown that had Apker not entered a plea of guilty to the weapons charge, which carried a mandatory minimum sentence of thirty years, it would have sought enhancement for a prior conviction, as it did with other co-conspirators. Accordingly, the career offender guideline would have been applicable to Apker's sentence.

Under the career offender guideline, Apker would have had two prior qualifying felony convictions and would have been classified as a career offender.[9] *See* U.S.S.G. §§ 4B1.1 and 4B1.2(3)(B) (defining "two prior felony convictions") and comment. (n.4) (stating provisions of § 4A1.2 are used to compute criminal history points applicable to counting of convictions under the career offender guideline). The "maximum term of imprisonment authorized for the crime of conviction" provided in the enhanced penalty statute provides the "offense statutory maximum" under which the offense level for a career offender is calculated in the Guidelines. *See* U.S.S.G. § 4B1.1, comment. (n.2); *LaBonte,* 520 U.S. at 759, 117 S.Ct. 1673. The career offender guideline provides an offense level of 37 for an offense whose "offense statutory maximum" is life. U.S.S.G. § 4B1.1(a). "A career offender's criminal history category in every case shall be Category VI." *Id.* An offense level of 37 combined with a criminal history category of VI would result in a sentence of 360 months to life.

■ Alternatively, even without a showing that the government would have sought an enhanced penalty, the sentencing judge would have departed upward from the recommended criminal history

8. This assumes that notice to seek an enhanced penalty had been filed under 21 U.S.C. § 851(a)(1). *LaBonte,* 520 U.S. at 754 n. 1, 117 S.Ct. 1673.

9. Apker would qualify for application of the career offender guideline under U.S.S.G. § 4B1.1 because (1) he was over 18 at the time of the offense; (2) the offense of conviction is a controlled substance offense, and (3) he had two prior convictions for controlled substance offenses. Hrg. Ex. 1 (record of 1978 conviction for distribution of methamphetamine) and Hrg. Ex. 2 (record of 1983 conviction for possession of LSD). Both of these early convictions qualify as "prior felony convictions" under U.S.S.G. § 4B1.2(3)(B) in that each conviction would count separately under § 4A1.1.

Although Apker contends the 1978 conviction is too old to qualify under Section 4A1.1, the court finds that the conviction counts. The 1978 conviction was entered on Jan. 8, 1979, less than ten years before Apker's "commencement of the instant offense" in March 1988. *See* U.S.S.G. § 4B1.1, comment. (n.3); Hrg. Ex. 1 and Hrg. Ex. 17 at 57 (indictment); Hrg. Ex. 18 at 248 (testimony that Apker and co-defendant Lovella Mauseth conspired in December 1988). The conviction would thus merit one criminal history point under U.S.S.G. § 4B1.1. Apker's state *and federal convictions in 1981 and 1983* would together count as another conviction under U.S.S.G. §§ 4A1.1(b) and 4A1.2(a)(2).

category of III to a criminal history category of VI under U.S.S.G. § 4A1.3. The Guidelines anticipate such departures "[i]In recognition of the imperfection of this measure [the maximum term imposed in a previous sentence to determine criminal history]," noting that "Section 4A1.3 permits information about the significance or similarity of past conduct underlying prior convictions to be used as a basis for imposing a sentence outside the applicable guideline range." *Id.* at § 4A1.1, comment., (backg'd.).

Apker clearly had a long criminal history that was not reflected in a criminal history category of III. *See supra* at 5 n. 3 & 6 n. 4. The court's review of the records of the state court convictions reveals that a veritable arsenal of weapons was seized from Apker in connection with his 1978 arrest. Hrg. Ex. 1 (Order dated Oct. 16, 1978, releasing seized evidence to defendant Gary Apker and Application and Order dated Nov. 20, 1979, rescinding release and transferring seized property to federal court in connection with a federal grand jury). He has been the focus of two major federal drug-trafficking and weapons offenses investigations. *See United States v. Coffman,* CR 81–0–10 (D.Neb.1981), and *United States v. Apker,* 90–CR–127 (D.Neb.1990). He is undoubtedly the leader of the drug conspiracy at issue in this case, and has been implicated in numerous other prosecutions.

The state court sentence of probation with thirty days' incarceration for Apker's 1978 conviction does not reflect the seriousness of Apker's drug and weapons crimes. The court can only attribute the earlier leniency in sentencing to an under-appreciation of the dangers of the then-emerging methamphetamine trade. Accordingly, the court finds a departure to a criminal history category of VI would be warranted.

## C. Role in the Offense

■ The evidence shows that a four-point enhancement as leader or organizer would be warranted under U.S.S.G. § 3B1.1. If Apker was not the leader or organizer, who was? It is undisputed that the criminal activity involved five or more participants. The testimony of Agent Heideman, bolstered by transcripts of recorded conversations and evidence from co-conspirators' trials, shows that Apker was the leader and organizer of the criminal enterprise. *See* Hrg. Trans. at 91. He clearly exercised decision-making authority and claimed a larger share of the proceeds than the co-conspirators. The evidence shows that Apker was the person to whom the others came for drugs. Moreover, Apker's role was noted as significant in the other co-conspirators' cases. *See* cases cited *supra* at 951. Accordingly, the court finds Apker's base offense level would be adjusted by four points for his role as an organizer or leader under U.S.S.G § 3B1.1. Thus, Apker's quantity-driven offense level would increase from 36 to 40 or his career-offender offense level would increase from 37 to 41. Either would result in a sentencing range of 360 months to life, assuming a criminal history category above III.

## D. Weapon Enhancement

Apker concedes that he would be subject to the two-point weapon enhancement under 2D1.1(b)(1). Hrg. Trans. at 13. The court finds that the presence of the weapon with the methamphetamine and cash in the safe supports such an enhancement. *See* U.S.S.G. § 2D1.1(b)(1) (providing for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed"); *Friend II,* 101 F.3d at 558 ("[a] defendant who is acquitted of a § 924(c) violation may nonetheless be subject to a two-level upward sentencing enhancement under

U.S.S.G. § 2D1.1(b)(1)"). Accordingly, Apker's base offense level would be increased to either 42 or 43. At those offense levels, Apker would be subject to a sentence of 360 months to life even if his criminal history category were III. At the offense level of 43, Apker would be subject to a mandatory life sentence under the Guidelines, regardless of his criminal history category.

### E. Acceptance of Responsibility

The determination of whether or not Apker would have received an acceptance of responsibility adjustment depends upon whether he would have been convicted after a trial or whether he would have entered a plea of guilty. The court finds it close to impossible to engage in any hindsighted imaginary fact-finding to resolve this issue. Apker contends he would have pled; the government contends he would not have. Neither side can make any showing to prove its position. Resolution of the issue is of no consequence, however, since the foregoing discussion illustrates that the drug charge was the more serious offense regardless of adjustment for acceptance of responsibility. At any rate, the defendant bears the burden of establishing a clear acceptance of responsibility, *United States v. Ngo*, 132 F.3d 1231, 1233 (8th Cir.1997), and Apker cannot so demonstrate.

### III. CONCLUSION

The court finds Apker would have been sentenced, under any of several scenarios, to a Guideline sentence of more than 360 months (thirty years). Accordingly, it has been established that the dismissed drug charges were indeed more serious that the weapons charge to which Apker entered a plea of guilty. Accordingly, since Apker cannot establish that he is actually innocent of these dismissed charges, Apker's habeas corpus action under 28 U.S.C. § 2255 is procedurally barred. *See United*

States v. Apker, 174 F.3d 934, 941 (8th Cir.1999) ("Only if the foregone charges are not 'more serious' than the 924(c) charge will Apker have overcome his procedural default.")

SO ORDERED.